Rodrigo MARTINEZ–MONTOYA,
Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 89–4109.

United States Court of Appeals,
Fifth Circuit.

July 10, 1990.

Jeff Larsen, Texas Legal Services Center, Austin Tex., for petitioner.

Kenneth H. Stern, Stern & Elkind, Denver, Colo., for amicus American Immigration Lawyers Ass'n.

Richard Thornburgh, Atty. Gen., U.S. Dept. of Justice, Norah Ascoli Schwarz, Alice M. Smith, Richard M. Evans, David J.

Kline, Robert L. Bombough, Civil Div., Washington, D.C., for respondent.

Ronald G. Parra, Deputy Director, Houston, Tex., John B.Z. Caplinger, Deputy Director, New Orleans, La., for other interested parties.

Before CLARK, Chief Judge, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Rodrigo Martinez–Montoya appeals from an order of deportation, which became final upon a denial of his application for legalization under Section 245A of the Immigration Reform and Control Act (IRCA), 8 U.S.C. § 1255a. Appellant asserts that the Immigration and Naturalization Service (INS) erred in denying his application for legalization because the Legalization Appeals Unit (LAU) of the INS incorrectly concluded that he has been convicted of a crime within the meaning of section 245A(a)(4)(B) of the IRCA, 8 U.S.C. § 1255a(a)(4)(B).[1] The alleged conviction was based upon his plea of guilty to a charge of forgery upon which the state court deferred adjudication under Texas Code Crim.Proc.Ann. art. 42.-12, § 3d (now § 5)(Vernon Supp.1990). If he has been convicted, Martinez–Montoya is ineligible for legalization under section 245A.

We hold that the deferred adjudication of Martinez–Montoya's guilty plea, which procedure allows further proceedings on the issue of guilt before entering judgment and a continuing right of direct appeal, does not constitute a "conviction" for purposes of section 245A of the IRCA.

I.

In February 1988, as part of a plea bargain, Martinez–Montoya pleaded guilty to a

---

1. Section 1255a(f)(4)(A) provides that "[t]here shall be judicial review of such a denial [of an application for legal status] only in the judicial review of an order of deportation under section 1105a of this title." 8 U.S.C. § 1255a(f)(4)(A). The judicial review of an order of deportation "includes all matters on which the validity of the final order is contingent, rather than only those determinations actually made at the [deportation] hearing." *INS v. Chadha*, 452 U.S. 919, 938, 103 S.Ct. 2764, 2777, 77 L.Ed.2d 317 (1982). Legalization is an affirmative defense to deportation. We therefore have appellate jurisdiction to consider the subject appeal challenging the validity of the denial of appellant's application for legalization.

felony charge of forgery in Texas criminal court. Upon receiving the plea, rather than entering a formal finding or judgment of guilt, the court deferred adjudication in the case altogether, pursuant to article 42.-12, § 3d.[2] The state court then ordered Martinez–Montoya to serve three years of probation, and to pay a fine and court costs.

In June 1988, while Martinez–Montoya was serving his probation, the INS arrested him in a workplace raid at a construction site in Austin, Texas. The INS initiated deportation proceedings against Martinez–Montoya, alleging that he had entered the United States without inspection. At the time of his arrest, Martinez–Montoya had filed a legalization application with a local voluntary agency, which later timely filed it with the Legalization Office of the INS. His application was pending during the deportation proceedings.

At the deportation hearing, Martinez–Montoya conceded deportability for his entry without inspection and was ordered deported. Pursuant to the automatic stay provision in the legalization statute, 8 U.S.C. § 1255a(e)(2)(A), the deportation order was stayed until his application for legalization was granted or denied.

In August 1988, Martinez–Montoya's application for legalization was administratively denied, based upon the INS District Director's determination that he was ineligible for legalization under section 245A of the Immigration Reform and Control Act

(IRCA). The section provides in relevant part:

(a) **Temporary resident status**

The Attorney General shall adjust the status of an alien to that of an alien lawfully admitted for temporary residence if the alien meets the following requirements:

\* \* \* \* \* \*

(4) **Admissible as immigrant**

The alien must establish that he—

\* \* \* \* \* \*

(B) has not been convicted of any felony or of three or more misdemeanors committed in the United States,

\* \* \* \* \* \*

Section 245A, 8 U.S.C. § 1255a. The immigration officer concluded that Martinez–Montoya had been convicted of a felony within the meaning of section 245A[3] and thus was ineligible for legal status. Martinez–Montoya appealed to the Legalization Appeals Unit (LAU) of the INS.

On appeal, the LAU upheld the denial of his application for legal status and dismissed the appeal based upon its independent determination that Martinez–Montoya was convicted of forgery when he pleaded guilty and was subjected to punishment by a state court. In its opinion, the LAU formulated an unprecedented two-prong test for determining whether an alien has been convicted within the meaning of § 245A:

> the defendant may be arrested and detained as provided in Section 8 of this Article. The defendant is entitled to a hearing limited to the determination by the court of whether it proceeds with an adjudication of guilt on the original charge. No appeal may be taken from this determination. After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and defendant's appeal continue as if the adjudication of guilt had not been deferred.

2. Texas Code Crim.Proc. art 42.12, Section 3d provides in relevant part:

> Sec. 3d. (a) When in its opinion the best interest of society and the defendant will be served, the court may, after receiving a plea of guilty or a plea of nolo contendere, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on probation on reasonable terms and conditions as the court may require and for a period as the court may prescribe not to exceed 10 years. However, upon written motion of the defendant requesting final adjudication filed within 30 days after entering such plea and the deferment of adjudication, the court shall proceed to final adjudication as in all other cases.
>
> (b) On violation of a condition of probation imposed under Subsection (a) of this section,

3. The District Director also found that Martinez–Montoya had committed a "crime of moral turpitude", rendering him excludable under section 212(a)(9) of the IRCA. The LAU did not reach this issue in its opinion. We therefore do not address it.

[A] conviction will be found for purpose [sic] of 245A(a)(4)(B) of the Act where these two elements are found:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere; and

(2) the judge has ordered some form of punishment or penalty, including but not limited to a fine or probation.

Under this test, because Martinez–Montoya pleaded guilty to the state charge of forgery and consequently was fined and placed on probation, the LAU held that Martinez–Montoya has been convicted of forgery within the meaning of § 245A. Appellant appeals from the LAU decision. The American Immigration Lawyers Association (AILA) participates in the appeal as *amicus curiae.*

## II.

We are asked to determine whether the LAU erred in holding that appellant Martinez–Montoya has been "convicted" within the meaning of section 245A of the IRCA, 8 U.S.C. § 1255a.

■ In *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984), the Supreme Court said:

The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. [Citations omitted.] If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.

The federal agency construction is to be upheld if it is reasonable, and if it is not contrary to Congressional intent. *Martin v. Kilgore First Bancorp., Inc.,* 747 F.2d 1024 (5th Cir.1984).

In order to consider the legal issues in their proper context, we find it appropriate to lay out briefly the relevant background and history of the LAU decision. The LAU derived its sweeping definition of conviction in part from the recent Board of Immigration Appeals (BIA) decision in *Matter of Ozkok,* Int. Dec. 3044 (BIA April 26, 1988). In *Ozkok,* after an extensive review of the relevant case law, legislative history, and INS precedent, the BIA deviated abruptly from long-standing INS and BIA precedent. It produced a new test for determining whether an alien has been convicted for immigration purposes.

Earlier, a conviction for immigration purposes was found to exist only when the following elements were satisfied:

(1) there has been a judicial finding of guilt;

(2) the court takes action which removes the case from the category of those which are (actually, or in theory) pending for consideration by the court—the court orders the defendant fined, or incarcerated or the court suspends sentence, or the court suspends the imposition of sentence; [and]

(3) the action of the court is considered a conviction by the state for at least some purpose.

*Matter of Ozkok, supra; Matter of L–R–,* 8 I & N Dec. 269 (BIA 1959). Additionally, and as a separate requirement, the conviction must be sufficiently final to consider the alien convicted for immigration purposes. This test "has been the standard we have applied since then [1959] to determine whether a conviction exists for immigration purposes." *Matter of Ozkok, supra.* Until the BIA decision in *Ozkok,* the INS consistently applied this same test to a myriad of immigration matters for over thirty years. *See, e.g., Matter of Garcia,* Int. Dec. 2995 (BIA 1985); *Matter of Zangwill,* 18 I & N Dec. 22 (BIA 1981); *Matter of Seda,* 17 I & N Dec. 550 (BIA 1980); *Matter of Robinson,* 16 I & N Dec. 762 (BIA 1979); *Matter of Varagianis,* 16 I & N Dec. 48 (BIA 1976); *Matter of Pikkarainen,* 10 I & N Dec. 401 (BIA 1963).

■ In *Ozkok,* however, the BIA rejected this well-established test as too narrow and undesirably subject to the vagaries of state law. Instead it modified the standard for determining whether a conviction exists for purposes of immigration

law. Under the new *Ozkok* standard, if a formal adjudication or judgment of guilt has been entered, then a conviction is deemed to exist. If, however, no formal judgment of guilt has been entered by the court, a conviction nonetheless will be found if the following elements are satisfied:

(1) A judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of non-essential activities or privileges, or community service); and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

The BIA thus entirely changed the third prong of the traditional test which followed the import of state law. It substituted its own third requirement that no further proceedings as to guilt or innocence are available to the alien in the event he or she violates his or her probation. Although the *Ozkok* decision drastically changed the standard for determining whether a conviction exists at all, it nonetheless reaffirmed the continued applicability of the separate and well-established rule that an alien's conviction also must be final to be considered a conviction for immigration purposes.

While the LAU followed the BIA's lead in dropping the traditional state law requirement from its definition of conviction, it then moved far beyond the *Ozkok* test by failing to adopt the third prong of the *Ozkok* standard. Furthermore, the LAU also omitted the separate traditional requirement of finality, which was kept intact by the *Ozkok* decision. Thus, as long as an alien has been found guilty or has pleaded guilty or nolo contendere, and received some form of punishment, under the LAU test he or she has been convicted for purposes of legalization.

### III.

We must, therefore, evaluate the legality of the unique and highly restrictive standard of the LAU. Was Martinez–Montoya convicted within the meaning of section 245A of the IRCA? The AILA (*amicus curiae*) urges this Court to hold that *both* definitions of conviction recently promulgated by the BIA in *Matter of Ozkok*, and by the LAU in this case, are invalid because they impermissibly delete the traditional reference to state law as a controlling factor in determining the existence of a conviction. Specifically, the AILA argues that not only did Congress intend one definition of conviction to apply to all immigration matters, including legalization, but it also intended that the specific definition to be applied would be the traditional standard. Under the traditional test, Martinez–Montoya would not be considered convicted because Texas does not consider its deferred adjudication procedure a conviction for any purpose.

We do not find it necessary or appropriate to reach the issue, however, as we dispose of this appeal on narrower grounds. We do note, however, that there is a singular lack of evidence of legislative intent to show that Congress has acted to establish a federal standard to determine whether or not a state criminal conviction has occurred, in view of the long and well-known history to the contrary. But we find that, regardless of the validity of *Ozkok* and the new BIA standard, the extreme and different standard adopted by the LAU in this case is invalid. We find instead that at least the LAU is bound to apply the BIA definition of conviction recognized in *Matter of Ozkok*, and that, under the *Ozkok* standard, Martinez–Montoya has not been convicted for purposes of immigration.

■ The LAU is an internal division of the Administrative Appeals Unit (AAU) of the Immigration and Naturalization Service (INS). It is the basic function of the AAU to decide cases under the authority of the Associate Commissioner for Examinations. 8 C.F.R. section 103.1(f)(2)(xxvii). The LAU is the sole body within the AAU possessing jurisdiction to hear appeals from the administrative denial of an application for legalization under the provisions of the IRCA. 8 U.S.C. section 1255a(f)(3)(A); 8 C.F.R. section 245a.3j.

INS regulations require all employees of the INS to follow BIA precedent decisions. **Decisions of the Board as precedents.** Except as they may be modified or overruled by the Board or the Attorney General, decisions of the Board shall be binding on all officers and employees of the Service or Immigration Judges in the administration of the Act, and selected decisions designated by the Board shall serve as precedents in all proceedings involving the same issue or issues.

8 C.F.R. section 3.1(g). The INS cannot permit the LAU to deviate from the regulations. Once regulations are enacted, the INS, and even the Attorney General, who oversees and commands the Service, are required to comply with their commands. *U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954); *Confederated Tribes and Bands of Yakima Indian Nation v. FERC*, 746 F.2d 466, 474 (9th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2358, 86 L.Ed.2d 259 (1985). Under the regulations, the LAU, which is operated by employees and officers of the Service, therefore clearly is required to follow BIA precedent.

Furthermore, it is noteworthy that both the AAU and the LAU repeatedly have cited BIA precedent as authority for their decisions. *See, e.g., Matter of Sandoz Crop Protection Corporation*, Int. Dec. 3067 (AAU 1988); *Matter of ——*, LAU Dec. (July 11, 1988)(AILA brief bank no. L0988–338). Additionally, in subsequent decisions regarding whether an alien has been convicted for purposes of section 245A, the LAU itself has sometimes disregarded or ignored without explanation the test for conviction it used in this case. *See* two cases (applicant names deleted) signed by Acting Director, LAU, dated January 12, 1990 and January 8, 1990; *but cf. Matter of ——*, signed by Acting Director, LAU, dated May 21, 1990. The LAU's reliance on BIA precedent, coupled with its failure to implement its own test for conviction, strongly suggests that the LAU has doubts about the validity of its test.

Based upon the clear mandate of the INS regulations, considered together with the LAU's and AAU's own practices, we find that the LAU, as a sub-unit of the AAU, is bound to adhere to BIA precedent on the subject issue.

■ Appellee INS urges that BIA decisions defining conviction for purposes other than legalization have no value as precedent on the issue of conviction for purposes of legalization. It contends that Congress explicitly and implicitly intended the LAU to have the exclusive, independent, and final authority to develop and declare the definition of conviction applicable to legalization matters, without regard to the law applicable to deportation and other aspects of the immigration statute. In support of its argument, appellee points to Congress' silence in the legalization statute as to the applicable definition of conviction. It urges that Congress lacked any intent to prescribe a particular definition of conviction for purposes of legalization, thus leaving the LAU free to develop its own definition.

But the INS misses the critical point. Although the statute grants the LAU exclusive *jurisdiction* over legalization appeals, it does not grant it authority to disregard binding precedent or to formulate a different definition of conviction than that applicable to other immigration matters.

As appellant points out, there are at least two reasons that Congress vested the LAU with exclusive jurisdiction over legalization appeals. One, by separating legalization appeals from the rest of the AAU, Congress hoped to preserve and protect the confidentiality of legalization applicants.

H.R.Rep No. 682, part I at 73, 99th Cong., 2nd Sess. (1986), U.S.Code Cong. & Admin. News 1986, p. 5649. Second, a separate appellate body was desirable in order to speed up the legalization process, which was designed to be a program of limited duration. These reasons do not mandate in any way an independent definition of "conviction".

It is axiomatic that " 'identical words used in different parts of the same act are intended to have the same meaning.' " *Sorenson v. Secretary of Treasury,* 475 U.S. 851, 860, 106 S.Ct. 1600, 1607, 89 L.Ed.2d 855 (1985), *quoting Atlantic Cleaners & Dyers v. United States,* 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1931). The IRCA merely amended the Immigration and Naturalization Act to include, *inter alia,* the legalization provisions; it did not create a completely separate and independent statute. Under this traditional rule of statutory construction, by its silence we must assume that Congress intended the definition applicable to other provisions of the immigration statute to apply to the legalization provisions as well. There is absolutely no indication in the statute or its history that Congress intended otherwise. We therefore conclude that the standard for conviction promulgated in *Matter of Ozkok* controls the definition of conviction in this case.

The LAU test is inconsistent with the *Ozkok* test in two respects. First, it impermissibly omits the third prong of the *Ozkok* test for determining whether a conviction exists in the event a formal judgment of guilt has not been entered. That prong states that a conviction nonetheless may exist if, upon violation of probation, a judgment may be entered without further proceedings on the issue of the alien's guilt or innocence of the original charge. Second, the LAU test eliminates the traditional separate finality requirement reaffirmed by the BIA in *Ozkok.*

## IV.

We now must apply the *Ozkok* standard to determine whether Martinez–Montoya has been "convicted." The first and second prongs of the standard clearly are satisfied. Martinez–Montoya pleaded guilty to the crime of forgery, and he received some form of punishment. At issue, however, is whether the third prong of the test has been satisfied. We also must determine if Martinez–Montoya's alleged conviction is sufficiently final to be considered a conviction for immigration purposes. This separate issue raises lack of finality if there is a right to appeal the conviction when it is entered.

### A. *Availability of Further Proceedings on Issue of Guilt*

▬ In order to consider an alien convicted despite the absence of a formal judgment, the third prong of the *Ozkok* test requires that an adjudication or judgment may be entered without the availability of further proceedings on the issue of the alien's guilt or innocence of the original charge. The Texas deferred adjudication procedure does not satisfy the requirement. Under the Texas procedure, if the accused violates the terms of his or her probation, the trial court has discretion to hold further proceedings on the issue of guilt before entering a finding of guilt and a judgment.

The case law in Texas is clear in establishing the "availability" of further proceedings. Also they are obviously "available" even if subject to judicial discretion. Thus, in *Cole v. State,* 757 S.W.2d 864 (Tex.App.1988), the trial court did not "accept" defendant's guilty plea until there was a hearing on revocation of deferred adjudication. The Texas court can entertain motions to withdraw the accused's plea of guilty or nolo contendere. In *Sawyer v. Texas,* slip opinion No. 60,006 (Tex.Crim. App. November 28, 1979), the court entertained accused's motion to withdraw guilty plea at a hearing on revocation of deferred adjudication. Finally, an accused may even have a right to a new trial depending on the statement of facts available to the court at the hearing on revocation of probation. *McLennan v. State,* Appeal No. 04–88–00139–CR (Tex.App., February 28, 1990), held that upon violation of probation,

accused was entitled to a new trial on the issue of guilt of the original charge due to the prosecution's and court's failure to maintain a statement of facts relating to original guilty plea.

It is the alien's opportunity to seek further proceedings on the issue of guilt that distinguishes the Texas scheme from the Maryland deferred adjudication procedure considered in *Ozkok*. Under the Maryland statute, upon the violation of the terms of probation, judgment is *automatically* entered without further review of the question of guilt. *See Ozkok, supra*. Thus, the BIA found that the alien in *Ozkok* had been convicted. Here, however, because further proceedings are available on the issue of his guilt, we hold that Martinez–Montoya's deferred adjudication does not constitute a conviction under the *Ozkok* standard.

### B. *Finality*

■ Moreover, even if the deferred adjudication of his guilty plea was considered a conviction, Martinez–Montoya still properly cannot be considered convicted for immigration purposes because the alleged conviction is not final. In order to consider him convicted within the meaning of section 245A of the IRCA, Martinez–Montoya must have exhausted, or waived, all direct appeals, or the appeals period must have lapsed. *Ozkok, supra*.

We trace the requirement of finality back to the *per curiam* decision in *Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955). In *Pino*, the Supreme Court considered whether an unique Massachusetts procedure, in which the state court suspends or revokes sentencing upon a finding of guilt and instead puts the case "on file", constituted a conviction for purposes of section 241 of the INA, 8 U.S.C. § 1251. The Court stated in its brief opinion:

> On the record here we are unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of Section 241 of the Immigration and Nationality Act, 8 U.S.C. 1251. The judgment is reversed.

*Pino, supra*. Even though the Court identified the procedure as a conviction, it nonetheless held that the conviction was not sufficiently final to lead to immigration consequences.

Since the 1955 *Pino* decision, both the federal courts and the INS itself consistently have considered finality a necessary and separate element of the definition of conviction for immigration purposes. The *Pino* opinion itself gives little indication as to the degree of finality required. But what is crucial is that all subsequent case authority has concluded that unless the alien has exhausted or waived his rights to direct appeal or the appeals period has lapsed the criminal proceeding is not sufficiently final to constitute a conviction for immigration purposes. *See, e.g., Marino v. INS*, 537 F.2d 686 (2d Cir.1976); *Aguilera–Enriquez v. INS*, 516 F.2d 565 (6th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Will v. INS*, 447 F.2d 529 (7th Cir.1971).

INS regulations and decisions similarly have always required finality. The INS regulation which provides the definition of conviction for purposes of deportation explicitly requires that:

> (1) There has been a conviction by a court of competent jurisdiction; and
>
> (2) All direct appeal rights have been exhausted or waived; or
>
> (3) The appeal period has lapsed.

8 C.F.R. section 242.2 (1989). Likewise, INS decisions, including the BIA decision in *Matter of Ozkok*, recognize that "[i]t is well established that a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived. [Citations omitted]." *Matter of Ozkok*, Int. Dec. 3044, at 10, n. 7 (BIA 1988). *See also Matter of Ibarra–Obando*, 12 I & N 576 (BIA, A.G.1967); *Matter of G*, 9 I & N Dec. 159 (BIA, A.G.1961); *Matter of Seda*, 17 I & N Dec. 550 (BIA); *Matter of O*, 7 I & N Dec. 539 (BIA 1957); *Matter of O'Sullivan*, 10 I &

N 320 (BIA 1963); *Matter of Garcia,* Int. Dec. 2995 (BIA 1985).

Under this overwhelming authority, and consistent with the *Ozkok* decision, we conclude that, unless Martinez–Montoya has waived or exhausted his right to direct appeals, or the appeals period has lapsed, he cannot be considered convicted for immigration purposes. The Texas law is explicit: Martinez–Montoya still possesses full rights to appeal a conviction after the court enters it. Tex Code Crim.P. art. 42.12, Sec. 3d(b). *See e.g., McLennan v. State, supra*[4].

 The LAU argues that Martinez–Montoya has in fact waived or lost his rights to direct appeal because he did not appeal the original order of deferred adjudication within the 30–day period provided in the deferred adjudication statute. The contention is patently wrong. Under the Texas deferred adjudication statute, the defendant retains all rights to direct appeal from the original plea proceedings in the event the state later proceeds to adjudication. *See* Texas Code Crim.Proc., Art. 42.-12, § 3d(b); *David v. State,* 704 S.W.2d 766 (Tex.Crim.App.1985) *(en banc ).*

Appellee alternatively argues that Martinez–Montoya's "conviction" is sufficiently final for immigration purposes because his remaining rights of appeal vest only if the state moves the state court to proceed with adjudication, which occurs only upon his violation of the conditions of probation. But this sophistic analysis ignores the fact that under Texas law there is no adjudication and no need to appeal unless the state does act.

We therefore hold that Martinez–Montoya has not been convicted within the meaning of section 245A of the IRCA because he has not waived or exhausted his direct appeals, nor has the appeals period lapsed.

## V.  CONCLUSION

In summary, we hold that the LAU erred in concluding that Martinez–Montoya has been convicted of a crime within the meaning of section 245A(a)(4)(B) of the IRCA. The LAU definition of conviction is deficient and invalid because it fails to adhere to the BIA definition established in *Matter of Ozkok.* Under the *Ozkok* test, in order to consider Martinez–Montoya convicted for immigration purposes, further proceedings on the issue of his guilt must not be available before a judgment can be entered. Because further proceedings are available under the Texas deferred adjudication procedure,. this requirement is not satisfied. Further, even if Martinez–Montoya were considered convicted, he has not waived or exhausted his right to direct appeals. The separate and well-established finality requirement therefore also has not been satisfied. We accordingly reverse the LAU order denying Martinez–Montoya's application for legalization, and remand the case for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

---

**4.** In *Ozkok,* the BIA concluded that the finality requirement had been satisfied because of the requirement in the Maryland deferred adjudica-tion procedure that the alien first must waive all rights to appeal from any subsequent entry of judgment.