Jose Luis **YANEZ–POPP**, Petitioner,

v.

**U.S. IMMIGRATION & NATURALIZATION SERVICE**, Respondent,

**American Immigration Lawyers Association, Amicus Curiae.**

**No. 92–1240.**

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1993.

Decided July 8, 1993.

Ronald Darwin Richey, L. Johnson & Associates, P.C., Wheaton, MD, argued (Laurence F. Johnson, on brief), for petitioner.

Lisa Dornell, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Donald E. Keener, on brief), for respondent.

Kenneth H. Stern, Stern & Elkins, Denver, CO, for amicus curiae.

Before WILKINSON, Circuit Judge, HALLANAN, United States District Judge for the Southern District of West Virginia, sitting by designation, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

CLARKE, Senior District Judge:

Petitioner, Jose Yanez–Popp, challenges his deportation by the Immigration Court based on its determination that a "probation without judgment" entered by the Montgomery County Maryland Circuit Court against petitioner was a "conviction" for federal immigration law purposes. For the reasons set forth below, we deny the petition.

## I. BACKGROUND

Yanez–Popp entered this country on August 7, 1990, as a nonimmigrant visitor from Mexico. He was authorized to stay in the United States for one year. On July 10, 1991, he pleaded guilty to a felony charge of possession with the intent to distribute a controlled dangerous substance, cocaine, in the Circuit Court for Montgomery County, Maryland.[1] He was sentenced on September 3, 1991; the "docket information" sheet contains the following information:

> Defendant was asked if he had anything to say before sentencing. Court grants disposition pursuant to Article 27, Section 641,[2] strikes guilty finding, places defendant on twenty-four (24) months supervised probation with special conditions as set forth in probation contract, imposes court costs, $1,500.00 fine to be paid through parole and probation @$163.50/month beginning October 7, 1991.

Joint Appendix at 33 (footnote added). Essentially, the Maryland court granted petitioner "probation before judgment" whereby it stayed judgment conditioned upon the successful completion of probation. In early December 1991, petitioner moved the Maryland court to either reconsider its sentence or terminate probation on the grounds that the INS viewed him as a dangerous drug offender and ineligible for bond. On December 31, 1991, the court terminated his probation.

Meanwhile, on November 6, 1991, the United States Immigration and Naturaliza-

---

1. The "docket entry" sheet for the circuit court contains the following pertinent information:
   Defendant placed under oath and enters a plea of guilty to [possession with the intent to distribute cocaine]. Court (Beard, J.) advises defendant of his rights, finds he has knowingly, intelligently and freely waived his right to a jury trial and entered his plea, accepts plea and enters finding of guilty to [the possession charge].
   Joint Appendix at 32.

2. Section 641 provides in pertinent part that:
   (a) ... 1(1)(i) [w]henever a person accused of a crime pleads guilty or nolo contendere or is found guilty of an offense, a court exercising criminal jurisdiction, if satisfied that the best interests of the person and the welfare of the people of the State would be served thereby, and with the written consent of the person after determination of guilt or acceptance of a nolo contendere plea, may stay the entering of judgment, defer further proceedings, and place

the person on probation subject to reasonable terms and conditions as appropriate ...
(2) By consenting to and receiving a stay of entering of the judgment ..., the person waives the right to appeal from the judgment of guilt by the court at any time....
(b) ... Upon violation of a term or condition of probation, the court may enter judgment and proceed with disposition of the person as if the person had not been placed on probation.
(c) ... Upon fulfillment of the terms and conditions of probation, the court shall discharge the person from probation. The discharge is final disposition of the matter. Discharge of a person under this section shall be without judgment of conviction and is not a conviction for purposes of any disqualification or disability imposed by law because of conviction of crime.
Md.Ann.Code art. 27, § 641 (1982).

tion Service ("INS") issued a Show Cause Order charging petitioner with deportability because he was an "overstay" and his "probation without judgment" made him an "aggravated felon" and an alien having a controlled substance "conviction." At a deportation hearing held on November 22, 1991, petitioner admitted the factual allegations in the Order but denied deportability as charged. He claimed he was not "convicted" for federal immigration purposes since he was not convicted for state law purposes. Nevertheless, based on his admissions and the record of "conviction," the immigration court found him deportable on all charges. Petitioner subsequently filed a Motion to Reconsider or Reopen the deportation proceedings arguing that the immigration judge erred in determining that "probation before judgment" under the provisions of Maryland law is a final conviction for immigration purposes. The Board denied his motion, and he now petitions this court.

## II. DISCUSSION

■ This case presents a single issue: whether a state court's granting of "probation without judgment" constitutes a "conviction" within the meaning of the immigration laws of the United States.[3] We review the Board's denial of petitioner's motion for an abuse of discretion. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *INS v. Abudu,* 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988); *M.A. A26851062 v. United States INS,* 899 F.2d 304 (4th Cir.1990) (en banc).

### A. *The Immigration and Naturalization Act and the Ozkok Standard*

The following persons, among others, may be deported pursuant to the Immigration and Naturalization Act ("INA"):

[A]ny alien who at any time after entry has been convicted of a violation of (or a con-

spiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance....

8 U.S.C. § 1251(a)(2)(B)(i) (Supp.1993). A conviction must be final in order to form the basis of the deportation. *Pino v. Landon,* 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955) (per curiam). In *In re Ozkok,* 1988 WL 235459, 1988 BIA LEXIS 4 (1988), the Board established a three part test to determine whether a conviction is sufficiently final for immigration purposes. Specifically, where an adjudication of guilt has been withheld, a conviction exists for immigration purposes where all of the following elements are present:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty; and

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions such as a rehabilitation program, a work-release or study-release program, revocation or suspension of a driver's license, deprivation of nonessential activities or privileges, or community service); and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Ozkok,* 1988 WL 235459, 1988 BIA LEXIS at 12–13. With *Ozkok,* the Board changed over thirty years of INS and Board precedent which looked, in part, to state law in determining whether a conviction is final for immigration purposes. *See In re L–R,* 8 I & N Dec. 269 (BIA 1959).

■ In *Ozkok,* the Board held that where an alien pleaded guilty to a narcotics offense,

---

3. At the outset, respondent INS notes that petitioner's issue on appeal need not be reached since the immigration court found petitioner deportable because he was an "overstay." Specifically, petitioner admitted to the factual allegations in the INS' show cause order—that he was "convicted" of violating a law relating to con-

trolled substances and of committing an "aggravated felony," and that he had remained in the United States for a longer time than permitted. Thus, he could be deported once he overstayed his visa. Because we find petitioner deportable under the *Ozkok* standard, we need not address this issue.

was given a term of probation and fined under the same "probation before judgment" statute at issue here, he had a final conviction for federal immigration purposes. The Board based its decision on Congress' intent not to allow narcotic violators to "escap[e] deportation as a result of a technical erasure of [their] conviction by a state." *Ozkok*, 1988 WL 235459, 1988 BIA LEXIS at 8. We agree with the Board that narcotic offenders must be dealt with seriously and uniformly and unless a conviction is vacated on its merits, a revoked state conviction is still a "conviction" for federal immigration purposes.

### B. *Ozkok's Validity*

Petitioner first attacks the validity of *Ozkok*. He argues the rule in *Ozkok* applying a federal rather that a state standard for defining "conviction" is inconsistent with INA and case law because it departs from precedent which instructed immigration courts to look at state law in determining whether a conviction was final for immigration purposes.[4] Petitioner cites, among other cases, the following cases in support of his argument: *Pino v. Nicolls*, 215 F.2d 237 (1st Cir.1954), *rev'd sub nom Pino v. Landon*, 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955) (per curiam); *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); and *Martinez–Montoya v. INS*, 904 F.2d 1018 (5th Cir.1990). Petitioner further asserts that Maryland courts do not define "probation without judgment" as a "conviction for purposes of any disqualification or disability imposed by law because of conviction of crime." *See* Md.Code Ann. art. 27, § 641(c) (1992); *see also, Shilling v. State*, 320 Md. 288, 577 A.2d 83 (1990); *Myers v. State*, 303 Md. 639, 496 A.2d 312 (1985). Accordingly, since the INA does not define "conviction" and the alleged "conviction" occurred in Maryland, it is "reasonable and logical to look to and rely on Maryland's definition of 'conviction.'" Moreover, petitioner contends *Ozkok* violates "principles of stare decisis, is contrary to Congressional intent and the Immigration and Nationality Act, is unreasonable, and constitutes improp-

er rulemaking." Petitioner further argues *Ozkok* violates the principles of res judicata, collateral estoppel and the Full Faith and Credit and Due Process clauses of the Constitution.

■ We agree with respondent INS that petitioner's contentions are without merit. First, *Ozkok*'s rule applying a federal rather than a state standard for defining "conviction" is reasonable and consistent with the INA and case law. A majority of circuits who have addressed the issue agree. *See Molina v. INS*, 981 F.2d 14, 19 (1st Cir.1992) ("The federal Constitution permits Congress to condition its immigration law upon the absence of a 'conviction' as *federally* defined"); *Kolios v. INS*, 532 F.2d 786, 789 (1st Cir.), *cert. denied*, 429 U.S. 884, 97 S.Ct. 234, 50 L.Ed.2d 165 (1976); *Martinez–Montoya v. INS*, 904 F.2d 1018 (5th Cir.1990) (same); *Yazdchi v. INS*, 878 F.2d 166, 167 (5th Cir.), *cert. denied*, 493 U.S. 978, 110 S.Ct. 505, 107 L.Ed.2d 507 (1989); *Aguilera–Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Will v. INS*, 447 F.2d 529, 531 (7th Cir.1971); *Gutierrez v. INS*, 323 F.2d 593, 596 (9th Cir.1963), *cert. denied*, 377 U.S. 910, 84 S.Ct. 1171, 12 L.Ed.2d 179 (1964); *Chong v. INS*, 890 F.2d 284, 285 (11th Cir.1989) (same).

■ Moreover, the Board has discretion to reinterpret the INA if it employs a "reasoned analysis." *Rust v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991) ("[a]n initial agency interpretation is not instantly carved in stone," and it "must be given ample latitude to 'adapt [its] rules and policies to the demands of changing circumstances'"). In *Ozkok*, the Board considered Supreme Court and federal precedent in concluding that Congress intended federal immigration laws to be uniform and that previous interpretations of state "convictions" under varying state laws for immigration purposes produced "anomalous and unfair results." *Ozkok*, 1988 BIA LEXIS at 10, 11. Accordingly, in light of our nation's drug

---

4. The American Immigration Lawyers Association submitted an *amicus* brief on behalf of petitioner on this issue.

problem, a federal definition of "conviction" was warranted. We find that these justifications are sufficient to support the Board's revised approach.

Second, the cases cited by petitioner—*Pino, Dickerson* and *Martinez*—do not support his argument. In *Pino*, the Supreme Court, in a paragraph-long per curiam opinion, reversed a deportation order by the First Circuit holding that a state procedure whereby a conviction is revoked and the case is put "on file" was not final for immigration purposes. *Pino v. Landon*, 349 U.S. 901, 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955). However, nowhere in the decision did the Court disapprove of the First Circuit's statement that "conviction" was to be defined according to federal not state law. *See Pino v. Nicolls*, 215 F.2d 237, 243 (1st Cir.1954).

In *Dickerson*, the Supreme Court held that for purposes of federal gun control laws, the definition of "conviction" was a question of federal law since there was an absence of Congress' intent to the contrary. 460 U.S. at 111–12, 103 S.Ct. at 991. Congress subsequently overruled *Dickerson* by requiring that a conviction be defined in accordance with the laws in which the criminal proceedings are held. However, the case still stands for the general proposition that federal law governs the application of Congressional statutes in the absence of a plain language to the contrary. *See United States v. Unger*, 915 F.2d 759 (1st Cir.1990) (citing *Dickerson* that classification of state offense under federal sentencing guidelines is question of federal law); *United States v. Morales*, 854 F.2d 65 (5th Cir.1988) (citing *Dickerson* for proposition that whether state conviction final for federal sentencing enhancement purposes is question of federal law). By overruling the holding in *Dickerson*, Congress merely provided the contrary indication that state, not federal law, applies in interpreting the federal gun control statute. Here, Congress has not overruled *Ozkok* with contrary legislation; accordingly, *Dickerson* persuades us to adopt *Ozkok*'s holding that for the purpose of the INA, federal, rather than state, law is used to define a "conviction." *Martinez* further weakens Petitioner's argument as the Fifth Circuit there both acknowledged and used the Ozkok standard in determining whether a "conviction" for federal immigration purposes existed. *See also Molina*, 981 F.2d at 19–20.

Third, *Ozkok*'s promulgation of the standard to determine whether a conviction exists was proper through Board adjudication rather than rulemaking. The Supreme Court has held that an agency "is not precluded from announcing new principles in an adjudicative proceeding and ... the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion. *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974); *accord Union Flights, Inc. v. Administrator, F.A.A.*, 957 F.2d 685, 688 (9th Cir.1992) ("administrative agencies are generally free to announce new principles during adjudication"). However, rulemaking through adjudication rather than rulemaking would be inappropriate where liability is premised on "past actions which were taken in good faith reliance on Board pronouncements." *Bell Aerospace*, 416 U.S. at 295, 94 S.Ct. at 1772.

Here, petitioner does not contend and there is no evidence that he relied on any pre-*Ozkok* decisions which found that no "conviction" for immigration purposes existed where a state entered a "deferred adjudication" that it did not consider a conviction for any purpose under state law. *See In re L—R—*, 8 I & N Dec. 269 (BIA 1959).

Fourth, *Ozkok* and the decision in this case do not violate the doctrines of *res judicata* or collateral estoppel. Simply stated, the INS was not a party to the criminal proceedings in which petitioner pleaded guilty and was given "probation without judgment." Thus there is no identity of parties. Moreover, the issue in this case was not identical to the one in the criminal proceedings. *See Aliff v. Joy Mfg. Co.*, 914 F.2d 39 (4th Cir.1984) (same cause of action and identity of parties in both actions required for res judicata to apply); *Watkins v. M & M Tank Lines, Inc.*, 694 F.2d 309 (4th Cir.1982) (same issue litigated in prior action and opportunity to defend required for collateral estoppel to apply).

■ Fifth, *Ozkok* does not violate the Full Faith and Credit clause of the Constitution by not construing "conviction" as do the Maryland courts. *Molina*, 981 F.2d at 19 ("The need for national uniformity in the application of federal law and the history of that word as applied by the INS ... and the courts, suggest that the federal word, while *reflecting* basic state usage, need not provide its *precise* mirror image"). Moreover, "the Constitution grants Congress the power to 'establish an uniform Rule of Naturalization.'" *Plyler v. Doe*, 457 U.S. 202, 225, 102 S.Ct. 2382, 2399, 72 L.Ed.2d 786 (1982).

■ Finally, *Ozkok* does not violate the Due Process clause of the Constitution because petitioner was given an opportunity to be heard at his deportation hearing. In fact, not only was he present at his deportation hearing, he appealed to the Board. *See Mathews v. Eldridge*, 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976) (notice and opportunity to present one's case is basic requirement of due process); *Maldonado–Perez v. INS*, 865 F.2d 328, 332–33 (D.C.Dir.1989) (due process satisfied if alien is afforded an evidentiary hearing with a reasonable opportunity to be present and to present his argument and evidence).

### C. *Ozkok's Applicability*

■ Alternatively, Petitioner contends that even under *Ozkok*, the "probation before judgment" entered in this case was not a final conviction because *Ozkok*'s three-prong test has not been met. Specifically, Petitioner first contends no "finding of guilt" exists because the Maryland court "struck" its guilty finding in affording him "probation without judgment." Second, no punishment was imposed on petitioner since his "probation without judgment" was lifted four months later. Third, since his probation was lifted, there was no probation violation to breach.

These arguments are without merit; petitioner's criminal record satisfies the three tests of *Ozkok*. First, a finding of guilt was made. Striking the guilty finding did not mean the facts supporting the finding no longer existed; it merely rewarded petitioner for good behavior during probation by technically erasing his conviction for reasons unrelated to its validity on the merits. *Garcia–Gonzales v. INS*, 344 F.2d 804, 808 (9th Cir.) (a court's entering of "probation without judgment" does not void a conviction on the merits but merely "rewards the [alien] for good behavior during probation by releasing certain penalties and disabilities"), *cert. denied*, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965); *cf. Ozkok*, 1988 WL 235459, 1988 BIA LEXIS at 12 (Court defined new standard for final "conviction" because old standard placed form over substance, "and aliens who [were] clearly guilty of criminal behavior and whom Congress intended to be considered "convicted" [were] permitted to escape the immigration consequences normally attendant upon a conviction."). Second, just because petitioner's probation was terminated does not mean some form of punishment was never imposed on him. Regardless of his subsequent termination of probation, it is undisputed that the circuit court did order a "punishment, penalty, or restraint," e.g. the probation and fine. Finally, it is undisputed that during the four months petitioner was on probation, the Maryland court had the power to enter a judgment or adjudication of guilt if he violated his probation. It is not logical to infer the third prong of *Ozkok* may be satisfied only during the period of time when probation is in effect. Rather it is satisfied if the statute allows entry of judgment upon violation of probation as does the Maryland statute here.

### III. CONCLUSION

■ For these reasons we adopt *Ozkok* and affirm the Board's decision denying Petitioner's Motion to Reopen and affirming the immigration court's deportation of Petitioner Yanez–Popp. The petition for review is

***DISMISSED.***