United States Court of Appeals,

Fifth Circuit.

No. 94-40492

Summary Calendar.

Morris Winston WILSON, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Feb. 1, 1995.

Petition for Review of an Order of the Board of Immigration Appeals.

Before KING, JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:

Petitioner Morris Winston Wilson seeks review of an order of deportation issued by the Immigration Judge and affirmed by the Board of Immigration Appeals. The deportation order was issued because of Wilson's conviction for possession of marijuana in Dallas County, Texas. Wilson challenges the order, contending that the Board's standard for conviction is contrary to congressional intent and to Supreme Court precedent, and alternatively arguing that his conviction was not final for purposes of deportation. Finding no merit in his contentions, we affirm the decision of the Board.

I. FACTUAL AND PROCEDURAL BACKGROUND

Wilson is a thirty-seven year old native and citizen of Saint Christopher who was admitted into the United States as a nonimmigrant visitor on or about March 3, 1985. On May 19, 1988, his status was adjusted to lawful permanent resident based on his

marriage to a United States citizen.

On July 15, 1988, Wilson pleaded guilty to and was convicted of possession of marijuana in a Texas state court in Dallas County. The self-titled "Judgment" stated that "[i]t is therefore found and adjudged by the court, that the said Defendant is guilty of the felony offense" of marijuana possession. Wilson received a sentence of four years confinement and a $500 fine, but the sentence was suspended and Wilson was placed on probation for a period of four years. On July 17, 1992, after Wilson had satisfactorily fulfilled his conditions of probation, the court entered an order setting aside the judgment of conviction, dismissing the indictment, discharging Wilson from probation, and releasing him from all penalties and disabilities resulting from the judgment of conviction.

The Immigration and Naturalization Service ("INS") issued an Order to Show Cause on May 31, 1992, charging Wilson with deportability under section 241(a)(2)(B)(i)[1] of the Immigration and Nationality Act ("INA"). At his hearing, Wilson admitted the allegations against him but denied deportability, arguing that his

---

[1]Section 241(a)(2)(B)(i) states in the following relevant part:

> Any alien who at any time after entry has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance, ... other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1251(a)(2)(B)(i). Wilson's conviction did not fall under the thirty gram exception.

conviction did not qualify as a conviction for immigration purposes. The Immigration Judge followed the Board of Immigration Appeals' ("BIA") decision in *Matter of Ozkok,* A-12150228, 1988 WL 235459 (BIA 1988), and concluded that Wilson's conviction was sufficient for immigration and deportability purposes. On appeal to the BIA, Wilson argued that the *Ozkok* conviction test was invalid, and alternatively, Wilson alleged that his probationary sentence did not meet the *Ozkok* conviction test. He also challenged the finality of his conviction for immigration purposes. The BIA reaffirmed the *Ozkok* test and rejected Wilson's other arguments. Wilson appeals from the BIA's decision, asserting essentially the same arguments presented to the BIA.

## II. STANDARD OF REVIEW

In reviewing challenges to the BIA's interpretation of a statutory term, we apply a two-pronged standard of review. First, we consider "the legal standard under which the INS should make the particular deportability decision." *Animashaun v. INS,* 990 F.2d 234, 237 (5th Cir.1993). If the governing statute does not clearly speak to the question before the court, we have "upheld agency interpretations of ambiguous law when that interpretation is reasonable." *Id.* (citing *Chevron, U.S.A., Inc. v. National Resources Defense Counsel, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As the Supreme Court has noted, "[w]e have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer...." *Chevron,* 467 U.S. at 844, 104 S.Ct.

3

at 2782.

After determining the controlling legal standard, "we will next examine the Board's findings under the substantial evidence test to determine whether the legal standard has been satisfied." *Animashaun,* 990 F.2d at 237. The substantial evidence standard "requires only that the Board's conclusion be based upon the evidence presented and that it be substantially reasonable." *Id.*

## III. ANALYSIS AND DISCUSSION

### A. The Validity of the *Ozkok* Conviction Standard

Wilson contends that the conviction test announced in the BIA's *Ozkok* decision is inapplicable because it is inconsistent with congressional intent and with the Supreme Court's decision in *Pino v. Landon,* 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955). We disagree with both of these contentions, but we begin by examining the background and the history of the *Ozkok* decision.

### 1. The foundations of *Ozkok*

In *Matter of Ozkok,* after "an extensive review of the relevant case law, legislative history, and INS precedent, the BIA deviated abruptly from long-standing INS and BIA precedent." *Martinez-Montoya v. INS,* 904 F.2d 1018, 1021 (5th Cir.1990). Under the narcotics violation provision of the INA, the BIA adopted a uniform federal standard for defining "conviction," rather than retaining a state-by-state standard. Specifically, the BIA stated that "we shall consider a person convicted if the court has adjudicated him guilty or has entered a formal judgment of guilt." *Ozkok,* 1988 WL at *4. "Where adjudication of guilt has been withheld," however,

4

the Board in *Ozkok* stated that a conviction will be found for immigration purposes when the following elements are present:

(1) a judge or jury has found the alien guilty or he has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilty;

(2) the judge has ordered some form of punishment, penalty, or restraint on the person's liberty to be imposed (including but not limited to incarceration, probation, a fine or restitution, or community-based sanctions ...); and

(3) a judgment or adjudication of guilt may be entered if the person violates the terms of his probation or fails to comply with the requirements of the court's order, without availability of further proceedings regarding the person's guilt or innocence of the original charge.

*Id.*

Wilson correctly points out that the *Ozkok* standard represents a departure from the BIA's previous position, which required "the action of the court [to be] considered a conviction by the state for at least some purpose." *Id.* at *6-7 n. 4; *Martinez-Montova,* 904 F.2d at 1021. In articulating this new standard, the BIA noted that the previous analytical framework was "too narrow and undesirably subject to the vagaries of state law." *Martinez-Montoya,* 904 F.2d at 1021; *Ozkok,* 1988 WL at *3. According to the BIA, "Congress did not intend for a narcotics violator to escape deportation as a result of a technical erasure of his conviction by a state." *Ozkok,* 1988 WL at *3 (citing *Matter of A—F—,* 8 I & N Dec. 429, 445-46 (BIA 1959)). The Attorney General noted "the federal policy to treat narcotics offenses seriously," and the Attorney General determined that "it would be inappropriate for an alien's deportability for criminal activity to be dependent upon "the vagaries of state law.' " *Ozkok,* 1988 WL at *3 (quoting

5

*Matter of A—F—,* 8 I & N Dec. 429, 445-46 (BIA 1959)); *see also Yanez-Popp v. INS,* 998 F.2d 231, 235 (4th Cir.1993) ("In *Ozkok,* the Board considered Supreme Court and federal precedent in concluding that Congress intended federal immigration laws to be uniform and that previous interpretations of state "convictions' under varying state laws for immigration purposes produced "anomalous and unfair results.' ") (quoting *Ozkok,* 1988 WL at *3). Thus, in light of the congressional resolve to combat our nation's drug problem and to unify the conviction standard, the BIA in *Ozkok* adopted a federal definition of "conviction."

## 2. Consistency with Congressional Intent

Wilson contends that the Firearms Owners' Protection Act[2]—an amendment to a federal firearms statute—indicates that the federal conviction standard in *Ozkok* is inconsistent with congressional intent. Wilson apparently believes that the enactment of this amendment indicates that Congress intended for the term "conviction" to hinge on whether the state considers the person convicted for some purpose. In other words, according to Wilson,

---

[2]The statute states in the following relevant part:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes *of this chapter,* unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921 (emphasis added).

the Amendment reveals that Congress intended for the pre-*Ozkok* conviction standard to govern immigration law because that standard required the action of the court to be considered a conviction by the state for at least some purpose.

We believe that Wilson's interpretation of the *firearms* amendment is much too broad. On this point, we wholly agree with the Fourth Circuit's analysis and discussion:

> In *Dickerson* [*v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845], [ (1983) ] the Supreme Court held that for purposes of federal gun control laws, the definition of "conviction" was a question of federal law since there was an absence of Congress' intent to the contrary. Congress subsequently overruled *Dickerson* [in 18 U.S.C. § 921] by requiring that a conviction be defined in accordance with the laws in which the criminal proceedings are held. However, the case still stands for the general proposition that federal law governs the application of Congressional statutes in the absence of a plain language to the contrary. By overruling the holding in *Dickerson,* Congress merely provided the contrary indication that state, not federal law, applies in interpreting *the federal gun control statute.* Here, Congress has not overruled *Ozkok* with contrary legislation; accordingly, *Dickerson* persuades us to adopt *Ozkok* 's holding that for the purpose of the INA, federal, rather than state, law is to define a "conviction."

*Yanez-Popp,* 998 F.2d at 236 (citations omitted) (emphasis added). In other words, the firearms amendment mandates a state definition of conviction *only for the firearms statute that it amends.* For purposes of the INA, the amendment is inapplicable, especially because of the congressional policy to treat narcotics offenses seriously and to unify the deportability standards.

### 3. *Pino v. Landon*

Wilson also contends that the BIA's *Ozkok* decision effectively overruled the Supreme Court's decision in *Pino v. Landon,* 349 U.S. 901, 75 S.Ct. 576, 99 L.Ed. 1239 (1955). In *Pino,* an alien had

been found guilty of petty larceny in Massachusetts district court. *See Pino v. Nicolls,* 215 F.2d 237, 240 (1st Cir.1954). The court found the defendant guilty, but it suspended his one-year prison sentence and instead imposed probation for one year. *See id.* at 241. As the Seventh Circuit described:

> Under a special Massachusetts procedure, upon the satisfactory completion of his probation, his sentence was revoked and his case was put "on file." The "on file" status meant that the case remained on the records of the court but no further action would normally be taken. However, it was theoretically possible that the case could again be called up and a sentence imposed, at which time the defendant-alien could appeal from the sentence so imposed and secure a trial *de novo* in the Massachusetts superior court.

*Will v. INS,* 447 F.2d 529, 531 (7th Cir.1971) (describing the facts of *Pino* ). The *Pino* court noted that "[p]lacing the case on file was not equivalent to a revocation of the judicial determination of Pino's guilt...." 215 F.2d at 244-45. The court subsequently held that the "on file" status of Pino's conviction did not negate its finality. *See id.* Significantly, however, the court also noted that "in the interest of a uniform application of the federal statute, the meaning of the word "convicted' is a federal question...." *Id.* at 243.

In a brief per curiam opinion, the Supreme Court reversed the holding of the First Circuit:

> On the record here we are unable to say that the conviction has attained such finality as to support an order of deportation within the contemplation of § 241 of the Immigration and Nationality Act. The judgment is reversed.

349 U.S. at 901, 75 S.Ct. at 576. Thus, it is clear that the Supreme Court only addressed the finality of the conviction in *Pino,* and the Court expressed no disagreement with the First

8

Circuit's characterization of "conviction" as a federal question. Simply put, the decision of the BIA to apply a federal conviction standard in *Ozkok* does not infringe at all, either explicitly or implicitly, upon the Supreme Court's holding in *Pino. See Yanez-Popp,* 998 F.2d at 236 ("[N]owhere in the [*Pino* ] decision did the Court disapprove of the First Circuit's statement that "conviction' was to be defined according to federal [and] not state law."). We conclude that the validity of *Ozkok* is unaffected by the Supreme Court's *Pino* decision.

### 4. Reasonableness of the *Ozkok* Standard

Simply put, we agree with the INS that Wilson's contentions are without merit. *Ozkok* 's rule applying a federal "conviction" standard rather than a state standard is reasonable and is consistent with congressional intent and the relevant case law. Numerous other circuit courts agree. *See, e.g., Paredes-Urrestarazu v. INS,* 36 F.3d 801, 811 n. 11 (9th Cir.1994) ("[T]he meaning of the term "conviction' is a question of federal law"); *Molina v. INS,* 981 F.2d 14, 19 (1st Cir.1992) ("The federal Constitution permits Congress to condition its immigration law upon the absence of a "conviction' as *federally* defined."); *Chong v. INS,* 890 F.2d 284, 285 (11th Cir.1989) ("The BIA was also correct in not considering the Florida expungement statute because this court, other courts of appeals, and the BIA have expressly held that the term "convicted' in the [INA] must be interpreted in accordance with federal standards.") *Yazdchi v. INS,* 878 F.2d 166, 167 (5th Cir.1989) ("[T]he consequences which a state chooses to

attach to a conviction in its courts for purposes of its own law are for it to say; but they cannot control the consequences to be given it in a deportation proceeding—a function of federal law."); *Aguilera-Enriquez v. INS,* 516 F.2d 565, 570 (6th Cir.1975) ("The definition of "convicted' ... is a matter of federal law, to be interpreted in harmony with the policies underlying the Immigration and Nationality Act."); *Will v. INS,* 447 F.2d 529, 531 (7th Cir.1971) ("We must, however, agree with other circuits that Congress intended the term "convicted' to be given meaning in light of federal law and policies rather than on the basis of all the peculiarities of the laws of the various states." (internal quotation omitted)).

Moreover, the BIA has discretion to reinterpret the INA if it employs a "reasoned analysis." *Rust v. Sullivan,* 500 U.S. 173, 187, 111 S.Ct. 1759, 1769, 114 L.Ed.2d 233 (1991). As the Supreme Court noted:

> [A] revised interpretation deserves deference because an initial agency interpretation is not instantly carved in stone and the agency, to engage in informal rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis. An agency is not required to establish rules of conduct to last forever, but rather must be given ample latitude to adapt [its] rules and policies to the demands of changing circumstances.

*Id.* at 186-87, 111 S.Ct. at 1769 (internal quotations omitted) (citations omitted). Based on our own analysis and on the deference that we accord to the BIA, we conclude that the *Ozkok* federal conviction standard is reasonable, and we will apply it in the present case. *See Martinez-Montoya,* 904 F.2d at 1021 ("The federal agency construction is to be upheld if it is reasonable and

10

if it is not contrary to Congressional intent.").

## B. Application of the *Ozkok* Standard

There is substantial evidence to affirm the BIA's conclusion that Wilson is deportable under the *Ozkok* test. Wilson's arguments regarding the satisfaction of the three *Ozkok* elements are misplaced and irrelevant, for the three-pronged test is only applicable "[w]here adjudication of guilt has been withheld." *Ozkok,* 1988 WL at *4. In this case, however, Wilson was not sentenced under the Texas deferred adjudication statute and adjudication of guilt was not otherwise withheld. On the contrary, *Ozkok* considers a person convicted "if the court has adjudicated him guilty or has entered a formal judgment of guilt." *Id.* These conditions are satisfied in Wilson's case, as his "Judgment" explicitly stated that he was "found and adjudged" guilty of marijuana possession by the court; only his *sentence* was suspended. Thus, there is substantial evidence to support the BIA's conclusion that Wilson has been "convicted" for purposes of the federal immigration laws.

## C. Finality of the Conviction

Wilson also contends that his conviction had not achieved a sufficient degree of finality during his probationary period. According to Wilson, his conviction is not final for deportation purposes because his probation remained subject to modification or revocation and because Texas probationers can appeal the revocation of their probation. Once again, we disagree with Wilson's contentions.

11

As we noted in *Martinez-Montoya,* "[w]e trace the requirement of finality back to the *per curiam* decision in *Pino v. Landon.*" 904 F.2d at 1025. Significantly, in *Martinez-Montoya,* we went on to make the following observations:

> The *Pino* opinion itself gives little indication as to the degree of finality required. But what is crucial is that all subsequent case authority has concluded that unless the alien has exhausted or waived his rights to direct appeal or the appeals period has lapsed the criminal proceeding is not sufficiently final to constitute a conviction for immigration purposes.

*Id.* at 1025. We adopted this framework for our "finality" determination:

> Under this overwhelming authority, and consistent with the *Ozkok* decision, we conclude that, unless [petitioner] has waived or exhausted his right to direct appeals, or the appeals period has lapsed, he cannot be considered convicted for immigration purposes.

*Id.* at 1026.

As mentioned, Wilson was not sentenced under a deferred adjudication statute; rather, he was "found and adjudged" guilty and his sentence was suspended. Considering that Wilson's "Judgment" of conviction was entered on July 15, 1988, his thirty-day direct appeals period has clearly lapsed. *See* Tex.R.App.P. 41(b)(1) ("Appeal is perfected when notice of appeal is filed within thirty days *after the day sentence is imposed or suspended* in open court or the day an appealable order is signed by the trial judge....") (emphasis added). Wilson is simply wrong in his contention that "the Texas procedure allows the defendant to appeal to the Court of Criminal Appeals for review of the trial and conviction during the probationary period." The statute does

provide that "[t]he right of the probationer to appeal to the Court of Criminal Appeals for a review of the trial and conviction, as provided by law, shall be accorded the probationer *at the time he is placed on probation.*" Tex.Rev.Civ.Stat.Ann. art. 42.12, § 8(b) (Vernon 1979). As mentioned, however, Wilson was placed on probation on July 15, 1988, and his statutory right of appeal lapsed shortly thereafter.

Wilson's finality argument based on the ability to appeal a revocation of probation is also unavailing. Simply put, Wilson's probationary period *has been completed;* thus, the right to appeal any modification or revocation of probation has lapsed and is inapplicable. Furthermore, Wilson's reliance on the *Will* opinion is misplaced, as that court agreed that a conviction is not final only when "a direct appeal is pending"—a situation that does not exist in Wilson's case. *Will,* 447 F.2d at 533. In short, we agree that Wilson's conviction has achieved a sufficient degree of finality for purposes of the federal immigration laws.

## IV. CONCLUSION

For the foregoing reasons, the decision of the BIA in support of deportability is AFFIRMED.