Filed:  December 3, 1999

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

No. 99-4206
(CR-98-133)

---

United States of America,

Plaintiff - Appellee,

versus

Thomas Lee Midgett, III,

Defendant - Appellant.

---

O R D E R

---

The court amends its opinion filed November 30, 1999, as follows:

On the cover sheet, section 7, line 1 -- the spelling of counsel's name is corrected to "James Ashford Metcalfe."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 99-4206

THOMAS LEE MIDGETT, III,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CR-98-133)

Argued: September 24, 1999

Decided: November 30, 1999

Before WILKINS and TRAXLER, Circuit Judges, and SEYMOUR,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Wilkins and Judge Seymour joined.

_____

**COUNSEL**

**ARGUED:** Robert Bryan Rigney, PROTOGYROU & RIGNEY,
P.L.C., Norfolk, Virginia, for Appellant. James Ashford Metcalfe,
Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON
BRIEF:** Helen F. Fahey, United States Attorney, Norfolk, Virginia,
for Appellee.

_____

**OPINION**

TRAXLER, Circuit Judge:

Thomas Lee Midgett, III ("Midgett") entered a conditional guilty plea to possession of a firearm by a person previously committed to a mental institution, <u>see</u> 18 U.S.C.A. § 922(g)(4) (West Supp. 1999), and was sentenced to thirty-three months imprisonment. He appeals, contending that his previous confinement was not the result of a "commitment" as contemplated by section 922(g)(4). We affirm.

I.

The facts are undisputed. In 1996, Midgett was charged in the General District Court of Henrico County, Virginia, with breaking and entering. Because Midgett appeared to be suffering from mental problems, the court appointed a physician to perform a psychological evaluation on Midgett to determine his mental competence to stand trial and his sanity at the time of the offense. After examining Midgett over an extended period of time at the jail, the physician reached these conclusions:

> It is my opinion that this man is probably suffering from a Delusional Disorder or even a Paranoid Schizophrenic formulation based on his altered concept of reality. It would be my opinion that he is suffering from an incapacitating mental illness which makes it impossible for him to understand the proceedings against him and is unable to cooperate in his own defense. Therefore, he is in definite need of treatment which would require his hospitalization in a Psychiatric facility in view of his incompetence at the present time. It is my opinion furthermore that at the time of the offense with which he is charged that he was suffering from a significant mental disease which rendered him insane at the time and that because of this, further evaluation including treatment in a psychiatric facility is indicated at this time.

J.A. 28.

2

After reviewing the statement of the physician and having heard evidence, the state court made the following factual findings: (i) Midgett was substantially unable to understand the proceeding against him, (ii) Midgett was unable to assist in the preparation of a defense, and (iii) Midgett needed inpatient hospital care due to his mental illness and to restore him to mental competency. Based upon these findings, and with the consent of both Midgett's attorney and the attorney for the Commonwealth, the state court issued an order committing Midgett to the custody of the Central State Hospital for mental health treatment. See Va. Code Ann. § 19.2-169.2 (Michie 1995). Pursuant to this order, Midgett was confined at Central State Hospital for two months. The staff psychiatrist there reached this conclusion:

> The defendant remains delusional, with resulting impairment in his understanding of the pending legal proceedings and his ability [to] assist his attorney in his defense. He is not considered to be competent to stand trial at this point in time. Furthermore, in spite of continued psychiatric care and treatment with psychotropic medication, he is not felt to be restorable to competency for the foreseeable future. He is not, however, considered to be dangerous to himself or others, and is capable of taking care of himself. In the event that the charges against the defendant are nol-prossed, the psychiatric treatment that he requires could be conducted on an outpatient basis through the Henrico Community Mental Health Services.

J.A. 20C. Apparently as a consequence of the psychiatrist's report, the state prosecutor decided to nol pros the charges, and on January 22, 1997 Midgett was released for outpatient care.

In 1998, Midgett contacted the Secret Service in Virginia, claiming to be the target of a conspiracy by the Masons.[1] While the agents were interviewing him at his residence, Midgett revealed that he had a number of weapons there with him. Midgett was eventually arrested

_____

[1] Midgett also claimed to have been directed by government agents to assassinate certain individuals and stated that the only reason he declined to carry out the assassinations was because he had not received the proper credentials.

3

and the firearms were seized pursuant to a search warrant. A federal grand jury indicted Midgett on four counts of possession of a firearm by a person previously committed to a mental institution. See 18 U.S.C.A. § 922(g)(4). After moving unsuccessfully before the district court to dismiss the indictments on the ground that his admission to Central State Hospital pursuant to the 1996 state court order was not a "commitment" under section 922(g)(4), Midgett entered a conditional guilty plea, reserving the right to appeal this issue.

II.

Section 922(g) prohibits a person from possessing a firearm if that person "has been committed to a mental institution." 18 U.S.C.A. § 922(g), (g)(4). We review the district court's determination that Midgett had been committed within the meaning of section 922(g)(4) de novo. See United States v. Hall, 972 F.2d 67, 69 (4th Cir. 1992). Midgett argues that his confinement to Central State Hospital for restoration to competency did not equate to a commitment to a mental institution. Specifically, he asserts the statute contemplates only a confinement resulting from the state's formal civil commitment process. We believe the statute has a broader application.

Our analysis is guided by the general principle "that federal law governs the application of Congressional statutes in the absence of plain language to the contrary." Yanez-Popp v. INS, 998 F.2d 231, 236 (4th Cir. 1993); see NLRB v. Natural Gas Util. Dist., 402 U.S. 600, 603 (1971) ("[I]n the absence of a plain indication to the contrary . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law.") (internal quotation marks omitted). Since section 922(g) does not direct us to apply Virginia law in determining whether a defendant has been "committed" under the statute, the question remains one of federal law. See, e.g., United States v. Chamberlain, 159 F.3d 656, 658 (1st Cir. 1998); United States v. Waters, 23 F.3d 29, 31 (2nd Cir. 1994).

The issue here is one of statutory interpretation, and we begin, as always, with the language of the statutory text. See Faircloth v. Lundy Packing Co., 91 F.3d 648, 653 (4th Cir. 1996). In the absence of a definition from Congress, see Smith v. United States, 508 U.S. 223, 228 (1993), we accord words in a statute their "ordinary, contempo-

4

rary, common meaning." Walters v. Metropolitan Educ. Enter., Inc., 519 U.S. 202, 207 (1997) (internal quotation marks omitted). Since Congress has not defined the term "committed," we read it in light of its common usage, having discerned no indication to the contrary. In its broadest sense, to "commit" means "to place officially in confinement or custody." American Heritage College Dictionary 280 (3d ed. 1997).

In this case, however, we are not called upon to decide the outer parameters of the term because Midgett's confinement falls squarely within any reasonable definition of "committed" as used in section 922(g)(4): (1) Midgett was examined by a competent mental health practitioner; (2) he was represented by counsel; (3) factual findings were made by a judge who heard evidence; (4) a conclusion was reached by the judge that Midgett suffered from a mental illness to such a degree that he was in need of inpatient hospital care; (5) a judicial order was issued committing Midgett to a mental institution; and (6) he was actually confined there. Under these particular circumstances, we have no hesitancy in finding that Midgett was committed to a mental institution and that application of section 922(g)(4) is proper.**2**

Midgett urges us to give controlling weight to the terminology Virginia has chosen to use in its mental health statutes. Generally speaking, these statutes use the term "commitment" when referring to the formal civil procedure for the involuntary confinement of mentally ill persons, which may or may not be used in conjunction with the criminal process.**3** See Va. Code Ann. § 37.1-63 to -70 (Michie 1995 & Supp. 1999). Virginia law also employs the terms "hospitalization," see Va. Code Ann. § 19.2-169.1B (Michie 1995), "treatment," see Va. Code Ann. § 19.2-169.2A (Michie 1995), and "admission," see Va. Code Ann. § 19.2-169.3A (Michie Supp. 1999) when referring to involuntary confinement. In interpreting section 922(g)(4), however, we are not bound by the terminology of Virginia statutory law; rather,

_____

**2** We express no opinion as to other situations involving involuntary admissions to mental institutions, but deal only with the case before us.

**3** Virginia's use of the term "commitment" is not always limited to civil commitment proceedings. See Va. Code Ann. §§ 19.2-169.6, 19.2-182.3 (Michie 1995).

5

we must look to the substance of the state procedure. <u>See</u> <u>Chamberlain</u>, 159 F.3d at 663. And when we do, we cannot help but conclude that Midgett's confinement was a commitment within the meaning of the statute.**4**

We are confident that our interpretation of the term "commitment" is consistent with federal policy relating to the possession of firearms as contemplated in 18 U.S.C.A. § 922(g)(4). Given Midgett's proven history of mental instability, he is undoubtedly in that class of persons "who by reason of their status, Congress considered too dangerous to possess guns." <u>United States v. Dunford</u>, 148 F.3d 385, 388-89 (4th Cir. 1998).

Several of our sister circuits have reached similar conclusions in interpreting the meaning of "committed" under section 922(g)(4). <u>See</u> <u>Chamberlain</u>, 159 F.3d at 657; <u>Waters</u>, 23 F.3d at 36 (defendant was "committed" within the meaning of § 922(g)(4) even without formal commitment process or judicial order); <u>United States v. Whiton</u>, 48 F.3d 356, 358 (8th Cir. 1995) (defendant was "committed" for purposes of § 922(g)(4) where following an evidentiary hearing, a state court judge found defendant to be mentally ill and orally ordered him "committed" to the hospital for temporary mental health services).

For the foregoing reasons, we conclude Midgett was "committed" to a mental institution as envisioned by 18 U.S.C.A.§ 922(g)(4). Accordingly, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

_____

**4** Congress itself used the term "commit" when contemplating hospitalization and treatment under circumstances such as these where, after a hearing, a judge finds the defendant mentally ill and incompetent to stand trial. <u>See</u> 18 U.S.C.A. § 4241(d) (West 1985).

6