**UNITED STATES of America**

v.

**William Charles JONES, Defendant.**

**No. 1:00CR00038.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Oct. 26, 2000.

Eric Matthew Hurt, U.S. Attorney's Office, Abingdon, VA, for U.S.

Barry Lynn Proctor, Abingdon, VA, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

The defendant in this criminal prosecution has moved to dismiss the indictment charging him with possession of a firearm after having been committed to a mental institution. The defendant contends that the stipulated evidence does not show that he was previously committed to a mental institution. Because the stipulated facts, when viewed in the light most favorable to the government, indicate that the defendant was validly committed, I am unable to grant the motion to dismiss.

I

On June 16, 2000, the grand jury of this court returned a four-count superceding indictment against Jones. The first count charges a violation of 18 U.S.C. § 922(g)(4), which makes it unlawful for any person who has been "committed to a mental institution" to possess any firearm in or affecting commerce. *See* 18 U.S.C.A. § 922(g)(4) (West 2000). The second count alleges a violation of 18 U.S.C. § 924(c)(1), which imposes penalties for the use of a firearm in furtherance of "any crime of violence." *See* 18 U.S.C.A.

§ 924(c)(1) (West 2000). The third count charges a violation of 18 U.S.C. § 842(i)(4), which makes it unlawful for any person who has been "committed to a mental institution" to transport any explosive in interstate or foreign commerce. See 18 U.S.C.A. § 842(i)(4) (West 2000). The final count alleges a violation of 18 U.S.C. § 844(h)(2), which imposes penalties for carrying an explosive during the commission of a felony. See 18 U.S.C.A. § 844(h)(2) (West 2000). The parties are agreed that all four counts are contingent upon whether Jones was previously "committed to a mental institution" within the meaning of § 922(g)(4).[1]

The government claims that the circumstances that constituted a "commitment" in Jones' case occurred in December 1986, and are set forth in certain documents agreed to by the parties at oral argument on the defendant's motion to dismiss.

On Christmas Day, 1986, Jones was arrested for alleged theft and held in the Scott County, Virginia, jail. The next day, Deputy Mark Taylor filed a petition for Jones to be examined at a mental health facility pursuant to sections 37.1–67.1 through 37.1–67.3 of the Virginia Code. In the petition, Deputy Taylor alleged under oath that Jones was "depressed and suicidal." The petition was dated December 26, 1986. Under section 37.1–67.1 of the Virginia Code, a magistrate may issue an order of temporary detention upon the sworn petition of any responsible person, but only "upon the advice of a person skilled in the diagnosis or treatment of mental illness." Va.Code Ann. § 37.1–67.1 (Michie Supp.1986). On the petition, a box was checked indicating that "[p]rescreen-ing evaluation has been made and the report recommending hospitalization is attached." However, the current copy of the petition has no attachments, and there is no other evidence of a mental evaluation of Jones by any expert in the field of mental illness. Because the date of admission to the hospital was the same date as the date of the petition, this signed petition may have served to have obtained a temporary detention order under section 37.1–67.1. If a person is temporarily detained under this section, in no event may the detention last for longer than seventy-two hours. See id.

The records indicate that counsel was appointed for Jones, and a hearing was held on December 29, 1986, before David B. Summerfield, Chief Judge for the Juvenile and Domestic Relations Court for the Thirtieth District of Virginia. Following the hearing, Judge Summerfield completed a form entitled "Certification and Order for Involuntary Admission to a Public or Licensed Private Facility," finding that Jones "[p]resent[ed] an imminent danger to himself as a result of mental illness," and that "[t]he alternatives to involuntary hospitalization and treatment were investigated and were deemed unsuitable ... [and] there is no less restrictive alternative to involuntary hospitalization and treatment in this case." The order required Jones be delivered to Southwestern State Hospital[2] for involuntary hospitalization and treatment "not to exceed 180 days" from the date of the order. Next to his signature certifying that he represented Jones, counsel for Jones wrote, "Further I noted an objection to his continued involuntary admission."

---

1. Counts One and Three allege violations of statutes that make it a felony to possess firearms or explosives after having been "committed to a mental institution." See 18 U.S.C.A. § 922(g)(4) and 18 U.S.C.A. § 842(i)(4). The government represents that Count Four is contingent upon Counts One and Three in that those counts provide the underlying felony or felonies necessary for a violation of 18 U.S.C. § 844(h)(2). Count Two is contingent upon Count Four in that Count Four may constitute a "crime of violence" within the meaning of 18 U.S.C. § 924(c).

2. Southwestern State Hospital is now named Southwestern Virginia Mental Health Institute. The parties do not contest that it is (and was in 1986) a "mental institution" within the meaning of § 922(g)(4).

Under Virginia law in 1986, the statutory procedure for the involuntary admission and treatment of a person for a maximum of 180 days included the following requirements:

[A]n examination of such person by a psychiatrist who is licensed in Virginia or a clinical psychologist who is licensed in Virginia or ... a physician or psychologist who is licensed in Virginia and who is qualified in the diagnosis of mental illness. The judge shall summons the examiner who shall certify that he has personally examined the individual and has probable cause to believe that he is or is not mentally ill, that such person does or does not present an imminent danger to himself or others, and requires or does not require involuntary hospitalization.

Va.Code Ann. § 37.1–67.3 (Michie Supp. 1986). The certification form signed by Judge Summerfield also states that "[t]he positive certification of at least one physician is necessary to commit the person named in the petition."

The order contains form language stating that the judge had "reviewed the medical certifications and statement of facts upon which such certificates are based." The portion of the form providing for a physician's certification, however, is blank. There are no attachments indicating that Jones underwent examination by a medical expert.

On December 31, 1986, Jones was discharged from Southwestern State Hospital. In his discharge summary, Joe Zealberg, M.D., reported that Jones had explained that he had been upset and frustrated about being in jail on Christmas away from his wife and four children. Dr. Zealberg concluded that Jones "gave no impression of being psychotic or depressed or of being any danger to himself," and that the hospital "did not feel that he needed acute hospitalization." On a separate form entitled "Discharge and Referral Data," a physician charac-terized Jones' condition as "Not Mentally Ill."

## II

Normally a defendant is precluded from obtaining a dismissal prior to trial on the sole ground that the evidence, once presented, will be insufficient as a matter of law to convince a reasonable jury to convict. *See United States v. Hall,* 20 F.3d 1084, 1087 (10th Cir.1994) ("Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion."). This is one of those unusual situations, however, in which the government has stipulated to the complete evidence that it will present at trial as to one of the essential elements of its case. That evidence consists of copies of certain records obtained from the Southwestern Virginia Mental Health Institute, as described in this opinion. Accordingly, I will consider the indictment as if it were expanded by the stipulated documents. *See United States v. Halseth,* 342 U.S. 277, 278–79, 72 S.Ct. 275, 96 L.Ed. 308 (1952).

The issue in this case is whether the defendant was "committed to a mental institution" within the meaning of 18 U.S.C.A. § 922(g)(4). While the defendant contends that the records show that he did not receive a pre-admission mental examination, recitations on the face of the documents prevent me from accepting that argument at this time.

In determining whether an event constitutes a commitment within the meaning of § 922(g)(4), the Fourth Circuit first looks to the plain meaning of the term "committed," then to the substance of the state procedure under which the purported commitment took place, and finally to federal policy relating to the possession of firearms. *See United States v. Midgett,* 198 F.3d 143, 145–46 (4th Cir.1999). While the plain meaning of the term "committed" is indeed broad, if no medical evaluation of Jones occurred prior to his involuntary

**554**

hospitalization, it is clear to me that the substance of the state procedure as applied to Jones would comport neither with the meaning nor policy of § 922(g)(4). The fact that Jones was later found not to be mentally ill by Dr. Zealberg at Southwestern State Hospital does not of itself mean that he had not been subjected to a valid commitment; if, however, no medical expert had ever found cause to believe Jones to be mentally ill, either pre- or post-admission, then it cannot be said that he was "committed" within the meaning of § 922(g)(4).

The Supreme Court has recognized that because of the liberty interest in freedom from involuntary confinement, the government must meet a high burden before committing someone for involuntary mental treatment:

> At one time or another every person exhibits some abnormal behavior which might be perceived by some as symptomatic of a mental or emotional disorder, but which is in fact within a range of conduct that is generally acceptable. Obviously, such behavior is no basis for compelled treatment and surely none for confinement. However, there is the possible risk that a factfinder might decide to commit an individual based solely on a few isolated instances of unusual conduct. Loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior.

*Addington v. Texas,* 441 U.S. 418, 426–27, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Accordingly, the Court has held that a finding of dangerousness alone, without a corresponding finding of mental illness, is not enough to justify involuntary confinement in a mental health facility. *See Foucha v. Louisiana,* 504 U.S. 71, 83, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Thus, the Court has recognized that some degree of medical diagnosis is a necessary element of the commitment of a person. Likewise, it has been held that equal protection prohibits the commitment of a person without an underlying medical judgment of mental illness. *See Jackson v. Foti,* 670 F.2d 516, 522 (5th Cir.1982); *Powell v. Florida,* 579 F.2d 324, 332 (5th Cir.1978). "[T]hat [a] person is mentally ill, is strictly a medical judgment that the judge can render only with the assistance of expert medical knowledge." *Powell,* 579 F.2d at 332.

Under sections 37.1–67.1 and 37.1–67.3 of the Virginia Code as they existed in 1986, the advice of a person skilled in the diagnosis or treatment of mental illness was a prerequisite to involuntary detention, admission, and treatment of a person for mental illness.[3] The records before me do not contain any reports of any evaluations that may have been obtained prior to Jones' temporary detention by the magistrate under section 37.1–67.1 or his involuntary admission and treatment for up to 180 days under section 37.1–67.3. Indeed, the only opinion by any medical expert in the record concludes that Jones was "not mentally ill." However, in at least two different places, form language indicates that the requisite medical evidence was obtained and reviewed. Because I cannot find, based on the evidence before me, that the required medical evaluations did not occur, I must deny the motion to dismiss the indictment.

It is certainly true that a long-term court-ordered involuntary confinement to a mental health facility, without any guidance from a mental health expert, is a deprivation of liberty in violation of an individual's constitutional rights of due process and equal protection. In Jones' case, the confinement was apparently triggered by his despondency over being jailed and away from his family on Christmas Day. To be involuntarily confined for such an "isolated incidence of unusual behavior" was contemplated and warned against by the Supreme Court in *Addington. See* 441 U.S. at 426–27, 99 S.Ct. 1804. If in fact

---

**3.** The statutes have since been revised, but still require such medical advice. *See* Va. Code Ann. §§ 37.1–67.1, –67.3 (Michie 1996 & Supp.2000).

Jones had been confined by the state court without any supporting medical opinion, I would have no hesitancy in finding that he was not "committed" within the meaning of § 922(g)(4).

The Supreme Court has recognized that the "principal purpose of the federal gun control legislation ... was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *See Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) (quoting S.Rep. No. 90–1501 at 22 (1968), *reprinted in* 1968 U.S.C.C.A.N. 4410). Assuming that Jones was never medically evaluated prior to his involuntary hospitalization, there was never a valid finding that Jones was mentally incompetent. In *United States v. Chamberlain,* 159 F.3d 656 (1st Cir.1998), cited favorably by the Fourth Circuit in *Midgett,* 198 F.3d at 145, 146, the court recognized that federal policy would not support a finding of commitment where a "defendant [is] found at the time of his admission to have no serious mental illness and ... not to be in need of hospitalization." *Chamberlain,* 159 F.3d at 662, n. 11. Thus, the federal policy of keeping firearms out of the hands of those previously committed for mental treatment does not support the charge against a person involuntarily hospitalized without any medical justification, and then deemed not mentally ill.

On the other hand, it is possible that Jones was evaluated by a mental health expert prior to his confinement. On the petition for temporary admission to a public health facility signed by the magistrate, a box is checked next to form language stating that "[p]rescreening evaluation has been made and the report recommending hospitalization is attached." Further, form language on the order signed by Judge Summerfield states that he had "reviewed the medical certifications and statement of facts upon which such certifications are based." Despite the fact that no records of such evaluations or certifications appear in the evidence before me and that the area for a physician's signature on the certification form is blank, it is possible that the medical opinion was given orally or that the relevant documentation has been misplaced. Indeed, I must presume that the procedure by which Jones was involuntarily hospitalized was properly followed. *See Voorhees v. Jackson,* 35 U.S. (1 Pet.) 449, 472, 9 L.Ed. 490 (1836) ("There is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears."). Therefore, I cannot dismiss the indictment on the facts before me, since a reasonable jury might find from these records that Jones was in fact committed to a mental institution within the meaning of the statute.

Of course, at trial other evidence may be presented that would sufficiently impeach the conclusory statements of the record so that a reasonable jury could not find that Jones had been committed within the meaning of the statute. Unless and until that occurs, however, I cannot dismiss the charges against the defendant.

### III

For the foregoing reasons, it is **ORDERED** that the defendant's motion to dismiss the indictment is denied.