**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-2125

THE REDEEMED CHRISTIAN CHURCH OF GOD (VICTORY TEMPLE) BOWIE, MARYLAND,

Plaintiff – Appellee,

v.

PRINCE GEORGE'S COUNTY, MARYLAND.

Defendant – Appellant.

------------------------------

SIKH COALITION; GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS,

Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge. (8:19-cv-03367-DKC)

Argued: September 22, 2021                    Decided: November 3, 2021

Before KING, THACKER, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Thacker and Judge Richardson joined.

**ARGUED:** Donald A. Rea, SAUL EWING ARNSTEIN & LEHR LLP, Baltimore, Maryland, for Appellant. Meghan K. Casey, GALLAGHER EVELIUS & JONES LLP, Baltimore, Maryland, for Appellee. **ON BRIEF:** Ashley N. Fellona, SAUL EWING ARNSTEIN & LEHR LLP, Baltimore, Maryland, for Appellant. Ward B. Coe III, Joseph C. Dugan, GALLAGHER EVELIUS & JONES LLP, Baltimore, Maryland, for Appellee. Christopher Pagliarella, YALE LAW SCHOOL FREE EXERCISE CLINIC, Washington, D.C.; Amrith Kaur Aakre, Cindy Nesbit, THE SIKH COALITION, New York, New York; Erika A. Maley, Christopher S. Ross, Alaric R. Smith, SIDLEY AUSTIN LLP, Washington, D.C., for Amici Curiae.

————————————

KING, Circuit Judge:

In this RLUIPA civil action that was initiated in the District of Maryland in November 2019, the district court ruled against defendant Prince George's County, Maryland (the "County"), and in favor of plaintiff The Redeemed Christian Church of God (Victory Temple) Bowie, Maryland ("Victory Temple").[1] The court's award of declaratory and injunctive relief to Victory Temple, after a bench trial conducted in June 2020, was predicated on the court's ruling that the County's denial of Victory Temple's application for a legislative amendment to the County's Water and Sewer Plan contravened RLUIPA. *See Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's Cnty.*, No. 8:19-cv-03367 (D. Md. Sept. 9, 2020), ECF No. 58 (the "Verdict").[2] The County has appealed, raising two primary issues that need to be resolved. First, we must decide whether the legislative amendment to the County's Water and Sewer Plan sought by Victory Temple constitutes a land use regulation subject to RLUIPA. Because we conclude that it does, we next assess whether the County's denial of Victory Temple's application for the legislative amendment violated RLUIPA's substantial burden provision.

---

[1] The acronym "RLUIPA" refers to the Religious Land Use and Institutionalized Persons Act, which was enacted in 2000 and codified at 42 U.S.C. § 2000cc *et seq*. As our Court has recognized, RLUIPA provides greater protection for the free exercise of religion than the Free Exercise Clause of the First Amendment. *See Madison v. Virginia*, 474 F.3d 118, 127 (4th Cir. 2006).

[2] Although a trial verdict is typically rendered by a jury, the term is also applicable to the resolution by the presiding judge who has conducted a bench trial. The Verdict in this case is published in the Federal Supplement and can be found at 485 F. Supp. 3d 594 (D. Md. 2020).

We also answer that question in favor of Victory Temple and therefore sustain the judgment.

## I.

In reciting the facts pertinent here, we draw heavily on the uncontested findings of fact rendered by the district court in its Verdict. We supplement those findings as appropriate with facts drawn from the record.

### A.

Victory Temple is a religious congregation affiliated with the Redeemed Christian Church of God, an evangelical church founded in Nigeria in 1952. Pastor Adebayo Adeyokunnu founded Victory Temple in 1996 in Laurel, Maryland. In 2000, Victory Temple purchased its first property in Bowie, just a few miles from Laurel. Two years later, Victory Temple began using the Bowie property as a church.

Since opening its Bowie church in 2002, Victory Temple's membership has grown rapidly, from about 500 to more than 2,000 members. Because the Bowie facility had an occupancy limit of only about 500, Victory Temple soon began searching for a larger property on which to locate and build a new church home for its expanding congregation. In February 2018, Victory Temple purchased a second Bowie property at 14403 Mount Oak Road (the "Property"). Victory Temple intended to build thereon a church facility with a seating capacity of up to 2,000 and a parking lot with about 750 spaces. The Property is located near the intersection of Church Road and Mount Oak Road in Bowie. It is zoned

"R-E" by the County, a zoning classification within which a church facility is a by-right use.

Prior to purchasing the Property, Victory Temple hired an engineering firm to conduct a feasibility study that analyzed Victory Temple's ability to build a church on the Property. In August 2017, the firm concluded that building a church on the Property was entirely feasible. The feasibility study revealed that the Property was in the County's water and sewer Category 5, an area planned for a future community water and sewer system. The feasibility study also informed Victory Temple that a traffic study would be required, but the engineering firm did not anticipate any issues related to traffic. With the benefit of the feasibility study, Victory Temple knew that the Property would require an upgrade from water and sewer Category 5 to Category 4 in order to be developed. Victory Temple purchased the Property reasonably expecting that it would be able to build its new church there.

B.

Two land use plans adopted by the County are pertinent to this appeal in that they each impact the availability of water and sewer service on the Property. Those plans are the 2035 Approved General Plan (the "General Plan") and the Water and Sewer Plan.

1.

The General Plan is a 20-year "blueprint for long-term growth and development" in the County. *See* Verdict 6. The General Plan "does not take a property-level view of the County or change land use designations or zoning on individual properties." *Id.* Instead, it offers comprehensive recommendations that are to guide development in the County. A

5

Growth Policy Map in the General Plan establishes the framework for attaining the General Plan's vision. For example, the Map shows where and how the County should grow over the next 20 years and specifies six area classifications. Additionally, the Map defines the growth boundary, which "designates the areas that are eligible to receive public water" and sewer service and influences where the County develops. *Id.* at 7. The General Plan also classifies properties located within the growth boundary — but which have not been approved for a water and sewer category change — as future water and sewer service areas. The future water and sewer service areas serve as holding zones "in which near-term development is deferred until additional residential capacity is required." *Id.* The Property that Victory Temple seeks to develop is located within the growth boundary and classified as a future water and sewer service area.

2.

The Water and Sewer Plan implements the General Plan and "guides the County planning and development processes by setting out the criteria under which both public and private water and sewer services can be provided." *See* Verdict 8. Chapter 2 of the Water and Sewer Plan spells out the water and sewer planning policies and procedures, including the water and sewer category change policies.

The Water and Sewer Plan designates four water and sewer categories which reflect "different planning levels for the provision of public water and sewer service." *See* J.A.

6

1111.[3]  The two categories at issue here are Category 4, Community System Adequate for Development Planning, and Category 5, Future Community Service.

The Water and Sewer Plan describes Category 5 as "land inside the Sewer Envelope that should not be developed until water and sewer lines are available to serve the proposed development." *See* Verdict 9.  Further, Category 5 properties "require a redesignation to Category 4 prior to the development review process," by way of a legislative amendment to the Water and Sewer Plan. *Id.*  The Water and Sewer Plan describes Category 4 as "all properties inside the Sewer Envelope for which the subdivision process is required." *Id.*

The Water and Sewer Plan — in its Chapter 6 — spells out the water and sewer category change requirements and procedures.  The amendment process pertinent here is the legislative amendment process, which applies to changes from Category 5 to Category 4.  In order for a category change to be approved through the legislative amendment process, the project must meet the policies and criteria listed in Section 2.1.4 of the Water and Sewer Plan. *See* Verdict 9.  Those criteria include environmental factors, economics and general fiscal concerns, conformity with zoning, and impacts on traffic. *See* J.A. 1115-18.

In order to begin the legislative amendment process, an application for a water and sewer category change must be submitted to the County's Department of Permitting, Inspections and Enforcement (the "County DPIE").  The County DPIE then "evaluates,

---

[3] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

prepares and submits proposed Legislative Amendments" to the County Executive — who governs the County's executive branch — for review and recommendations. *See* Verdict 10. The County DPIE sends those recommendations, along with a proposed Council Resolution, to the County Council — which governs the County's legislative branch — for consideration. Although several entities — including the County DPIE, the County Executive, the Bowie City Council, and the Maryland-National Capital Park and Planning Commission ("M-NCPPC") — offer input to the County Council, the authority and responsibility to legislatively amend the Water and Sewer Plan rests solely with the County Council, which acts on behalf of the County itself. A category change application that is approved by the County Council constitutes a legislative amendment by the County to the Water and Sewer Plan.

C.

In May 2018, after purchasing the Property, Victory Temple met with M-NCPPC's staff personnel to discuss its plan to locate and construct the new church. At that time, the M-NCPPC staff informed Victory Temple that, in order to develop the Property, it would need a water and sewer category change. With respect to traffic, the "Transportation section [of M-NCPPC did] not believe there [were] any significant traffic concerns because the intersection [had recently been] improved," but that further review would be required "to ensure this." *See* Verdict 12.

On November 27, 2018, Victory Temple submitted to the County DPIE its application for a water and sewer category change from Category 5 to Category 4 (the "Application"). The County's handling of that Application underlies the dispute in this

8

litigation. The County DPIE then circulated the Application to various entities and personnel for review and comment.

Several responses to the Application were received. On January 31, 2019, the City Manager of Bowie determined that the Property "[met] the criteria for advancement" and recommended approval by the County Council, emphasizing that many nearby parcels were already in water and sewer Category 3. *See* Verdict 12. On February 4, 2019, and February 19, 2019, the Bowie City Council conducted hearings on the Application.[4] Following testimonial evidence both supporting and opposing the Application from several individuals in attendance at the February 19 hearing, the Bowie City Council recommended that the Application be denied.

On March 12, 2019, the County Council took initial steps to consider the Application by introducing a resolution that included it. On April 11, 2019, the County DPIE sent its report to the County Council, which included approval recommendations of the County DPIE, the County Executive, and M-NCPPC. The report advised, however, that further studies would be required at a later stage. Those studies, which could include a traffic study, are normally conducted after the category upgrade, at the preliminary plan of subdivision phase.

On April 16, 2019, the County Council conducted a public hearing with respect to the Application. Several persons testified against the Application, and the concerns they

_____

[4] On February 4, 2019, the Bowie City Council "tabled action" concerning the Application until its next meeting, conducted on February 19, in order to hear from the local homeowners associations. *See* Verdict 12.

9

raised included traffic safety, declining property values, and even "the potential light pollution that would prevent [the testifying resident] from looking at the stars." *See* J.A. 672. Several individuals also testified in favor of the Application.

A week thereafter, on April 23, 2019, the County Council's Transportation Committee, which was comprised of five council members, discussed the Application. During that meeting, Shirley Branch, a representative of the County DPIE, explained its recommendation for approval of the Application by stating, "[w]hen we reviewed [the Application], they met all the criteria that is adopted in the Water and Sewer Plan. And when they meet th[ose] criteria, unless there are some extenuating circumstances, our recommendation would always be to allow it to go to Category 4." *See* Verdict 14. Branch also said:

> [W]e saw no other extenuating circumstances other than when we arrived at the public hearing to know that there was some opposition by the homeowners in the area . . . . And again, based on the information that [the County] DPIE reviewed, our recommendation remains that the [A]pplication met the criteria of the Water and Sewer Plan, and that's all we look at.

*Id.*

During the Transportation Committee's meeting on April 23, Todd Turner, the County Council's Chair and a member of the Transportation Committee, opposed the Application. Turner asserted that the size of the proposed church would "unduly burden the community . . . particularly in an area where we have a history of speeding and accidents." *See* Verdict 15. He also maintained that a denial of the Application "would not create an undue burden on or preclude the church in developing its property in the future consistent with the community character." *Id.* Turner asserted that "compelling

10

reasons" existed for maintaining the current Category 5 for the Property, including the following:

> [T]raffic impacts, the environmental impacts, the economic impact, the fiscal impact, potential pollution and air pollution, lack of infrastructure, including for stormwater management, potential impact on the quality of life, inconsistency with the General and Area Master Plans, no demonstration of a hardship by [Victory Temple], and, additionally, the City of Bowie's position.

*See* J.A. 743.  At the conclusion of the April 23 meeting, the Transportation Committee voted to deny the Application.

On May 7, 2019, the County Council convened and adopted the Transportation Committee's recommendation to deny the Application.  This litigation stems from that denial, which was made by the County Council on behalf of the County.

## II.

### A.

On November 22, 2019, Victory Temple filed its Complaint against the County, alleging therein that the denial of the Application violated RLUIPA's substantial burden provision.  Victory Temple sought declaratory and injunctive relief, plus damages and other relief.  On December 16, 2019, the County moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court denied that motion on February 6, 2020.  The parties promptly agreed to expedited discovery and a bench trial.

The bench trial was conducted virtually from June 23 to June 25, 2020.  Five witnesses were called by Victory Temple and four by the County.  Among the witnesses

for Victory Temple was its head pastor, Adebayo Adeyokunnu. He explained the mission and religious practices of Victory Temple, the growth of its congregation, the decision to purchase the Property for the new church, and the adverse consequences of the County's denial of the Application. Next, Owenvbiugie Edoohonba, a member of Victory Temple's congregation, testified about the importance of the church to him and his family. Barry Caison, a project manager employed by the engineering firm that conducted the feasibility study for Victory Temple, explained the bases for the firm's conclusion that building a church on the Property was feasible. Victory Temple also presented the evidence of Arthur Horne, a local attorney specializing in land use in Prince George's County. Horne explained the relevant land use regulations of the County and how the advancement of the Property to Category 4 was necessary for its development to begin. Finally, Isaac Adeyemo, Victory Temple's associate pastor, explained the services that the church provides to the indigent and underprivileged, as well as the problem of overcrowding at Victory Temple's current location.

For the County, Shirley Branch, the County DPIE representative who worked on the Application, testified about the category change procedures. She also explained the report her office assembled for the County Executive and County Council, which included comments by various entities and agencies as well as the recommendation that the Application be approved. Additionally, three residents who lived near the Property testified for the County about unsafe conditions on Mount Oak Road and Church Road. Sharma Simmons-Sims, who lived along Mount Oak Road next to the Property, had a six-foot-tall metal fence on her property line that had been struck several times by vehicles

12

losing control along Mount Oak Road. She had also seen the results of multiple accidents on the road. Simmons-Sims admitted that she relied on "common sense" in her description of the road conditions and asserted that she did not "need a traffic study to tell [her] that the current infrastructure [would not] support an additional increase in traffic that the proposed development would have brought with it." *See* J.A. 2861. Next, James Albert, who lived on Church Road close to the Property, described the road as "terrible" and produced photos of accidents on the road. *Id.* at 2874. Finally, Carrie Weaver-Bridges, a member of the Board of Directors of a Boys and Girls Club, testified that, on Sundays, the Boys and Girls Club used ball fields just off Church Road, less than a quarter mile from Victory Temple's proposed development. She explained the insufficiency of parking spaces, which caused people to park across the street at a high school, also located on Church Road near the Property. Weaver-Bridges explained that parking across the street caused children to cross Church Road to reach the ball fields. She expressed concern that a nearby church would bring more traffic.

B.

On September 9, 2020, the district court filed its Verdict, spelling out its findings of fact and conclusions of law and declaring that the County had violated RLUIPA by denying the Application. In ruling that RLUIPA applied, the court focused on the definitions in RLUIPA and concluded that "there [was] no question that water and sewer category change requests occurr[ed] parcel by parcel." *See* Verdict 18. That permitted the County to make "individualized assessments of the proposed uses for the property involved." *Id.* at 19. The court then determined that the County's denial of the Application constituted a

13

substantial burden because Victory Temple could not build the church that it needed while the Property remained in Category 5. As such, the court reviewed the County's denial of the Application under the RLUIPA-mandated strict scrutiny standard of review. Applying that standard, the court concluded that the County had failed to show that its denial of the Application constituted the least restrictive means to achieving a compelling governmental interest.

On October 2, 2020, the district court applied its Verdict and entered an order that awarded Victory Temple permanent injunctive relief. *See Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's Cnty.*, No. 8:19-cv-03367 (D. Md. Oct. 2, 2020), ECF No. 62 (the "Injunction"). In support of the Injunction, the court reiterated that the County's decision to deny the Application violated RLUIPA and that damages would be inadequate to fully redress the RLUIPA violation, in that an award of damages would not enable Victory Temple to use its Property for religious purposes. The court found that the balance of hardships also favored an award of injunctive relief as it would "allow Victory Temple to proceed to the next stage of development, and that relief for Victory Temple outweigh[ed] any potential harm to the County." *Id.* at 2-3. Finally, the court explicitly found that "the injunction would serve the public interest by vindicating Victory Temple's religious exercise rights under RLUIPA." *Id.* at 3.

The district court therefore permanently enjoined the County from denying the Application and ordered the County to amend its Water and Sewer Plan and advance the Property to water and sewer Category 4. The Injunction then stayed further district court proceedings, including the final resolution of the damages issues, pending the County's

14

anticipated appeal. The court excepted from the stay any proceedings relating to compliance with the Injunction, supplemental discovery, and evidentiary hearings on damages.

C.

On October 16, 2020, the County filed its notice of appeal, seeking relief from the Injunction. We possess jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which authorizes an immediate appeal from an order granting a permanent injunction. [5]

III.

We generally review a granting of an injunction for abuse of discretion. *See Virginia Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 392 (4th Cir. 2001). And we have recognized that "[a] district court abuses its discretion if it relies on an error of law or a clearly erroneous factual finding." *See SAS Inst., Inc. v. World Programming Ltd.,* 952 F.3d 513, 523 (4th Cir. 2020) (internal quotations omitted), *cert. denied*, 141 S. Ct. 1053 (2021).

Here, the County challenges the Injunction based on purported errors in the Verdict. Specifically, the County maintains that the district court erred when it concluded that RLUIPA applies to Victory Temple's Application for a water and sewer category change.

---

[5] On December 3, 2020, the County moved in the district court for a stay of the Injunction or suspension of judgment pending appeal. The district court rejected the County's motion on March 23, 2021. The County also sought a stay pending appeal in this Court, but that motion was also denied.

15

The County further contends that the court erred in ruling that the County's denial of the Application fails strict scrutiny review, thus violating RLUIPA's substantial burden provision. We review each of those contentions de novo. *See Billups v. City of Charleston*, 961 F.3d 673, 682 (4th Cir. 2020) (explaining that, on appeal from a bench trial, we review the district court's legal conclusions de novo); *Grutter v. Bollinger*, 539 U.S. 306, 327-43 (2003) (reviewing the district court's strict scrutiny application de novo). [6]

IV.

The threshold question in this appeal is whether RLUIPA applies to the legislative amendment to the County's Water and Sewer Plan sought by Victory Temple. The district court concluded in the Verdict that it does, and we agree.

RLUIPA prohibits governments from imposing or implementing land use regulations in a manner that imposes a substantial burden on religious exercise. *See* 42 U.S.C. § 2000cc(a)(1)(A), (B). RLUIPA only applies where

> the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

---

[6] The County contends that the district court did not possess jurisdiction to adjudicate Victory Temple's RLUIPA claim. RLUIPA expressly creates a cause of action for violations of its provisions. *See* 42 U.S.C. § 2000cc-2 (a). When a claim arises under a federal statute that creates a cause of action, as RLUIPA does, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331. According to the County, the district court applied an unconstitutionally broad definition of "zoning," which undermines federal question jurisdiction. We reject that contention as frivolous.

*Id.* § 2000cc(a)(2)(C).

Thus, we must decide whether the legislative amendment to the County's Water and Sewer Plan sought by Victory Temple satisfies two requirements. First, we ask whether, in denying the Application, the County made "individualized assessments of the proposed uses for the property involved." Second, we ask whether the requested legislative amendment constitutes a "land use regulation."

A.

With respect to our first inquiry, there is no question that, when the County Council and other County entities evaluated the Application, they made individualized assessments of Victory Temple's proposed uses of the Property. As our colleagues in the Ninth Circuit have correctly observed in this context, a governmental entity makes an individualized assessment — thus triggering RLUIPA — "when [it] may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use." *See Guru Nanak Sikh Soc. of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006). In this situation, those involved in the County's review and assessment process with respect to the Application made recommendations based on features of Victory Temple's proposed development, including the size of its new church and its parking lot, the conditions of the roadways nearby, and compliance of the Property with other relevant regulations. With that information in hand and predicated on its individualized review of the Application, the County Council denied the Application. That denial resulted from a "parcel-by-parcel" evaluation and plainly constituted an individualized assessment of Victory Temple's proposed use of the Property.

17

B.

Our next inquiry is whether the individualized assessment of Victory Temple's proposed use of the Property was made pursuant to a land use regulation. In order for the requested water and sewer legislative amendment to constitute a "land use regulation," it must be "a zoning . . . law or the application of such a law, that limits or restricts a claimant's use or development of land." *See* 42 U.S.C. § 2000cc-5(5). The meaning of the word "zoning" is thus relevant in this dispute.

1.

The County contends that we should interpret "zoning" under Maryland state law. It asserts that, under state law, an amendment to a water and sewer plan is a comprehensive planning action, and neither a zoning law nor its application. We reject that contention.

We are obligated to construe federal statutes under federal law, unless Congress has clearly mandated otherwise. In 1971, the Supreme Court explicitly ruled that federal law — rather than state law — governed its interpretation of a key term in the Labor Management Relations Act. *See NLRB v. Nat'l Gas Util. Dist. of Hawkins Cnty.* 402 U.S. 600, 603 (1971). The Court recognized that certain instances may exist "in which the application of certain federal statutes may depend on state law," but held that "[i]n the absence of a plain indication to the contrary . . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law." *Id.* (internal quotations omitted). And our Court has also recognized that "federal law governs the application of Congressional statutes in the absence of plain language to the contrary." *See United States v. Midgett*, 198 F.3d 143, 145 (4th Cir. 1999) (quoting *Yanez-Popp v. INS*,

18

998 F.2d 231, 236 (4th Cir.1993)). Because RLUIPA does not contain a "plain indication" that state law should govern its interpretation, we are satisfied that federal law applies here.[7]

The rationale for applying federal law in construing a federal statute is particularly clear in disputes under RLUIPA. The purpose of RLUIPA, which is readily discernable from the plain language of the statute, is to prevent governments, including state and local governments, from burdening religious exercise by "impos[ing] or implement[ing] land use regulations." *See* 42 U.S.C. § 2000cc(a)(1). That goal could be undermined if a State's own definition of a "land use regulation" controlled. As the Amici supporting Victory Temple have correctly emphasized, a State could, after all, define the applicable and key RLUIPA terms narrowly, thus limiting RLUIPA's application.[8]

2.

Because federal law governs our construction of the term "zoning," as it is used in RLUIPA, we must ascertain the applicable meaning of that term. When faced with a

---

[7] The County relies on the Supreme Court decision in *Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204 (1946), in arguing that state law governs our construction of the term "zoning." That decision, however, is inapposite. In *Reconstruction Finance,* the Supreme Court ruled that state law governed construction of the term "real property" as the term appeared in a federal statute that subjected federal real property to local tax laws. *Id.* at 208. Significantly, the federal statute subjected federal "real property" to local laws. *Id.* at 206. In contrast, RLUIPA exempts religious land use from state laws when such laws substantially burden religious exercise without satisfying strict scrutiny.

[8] We note our appreciation to the Amici — the Sikh Coalition and the General Conference of Seventh-Day Adventists — for their valuable perspective on the issues presented here.

19

statutory provision, "the starting point for any issue of statutory interpretation . . . is the language of the statute itself." *See D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016) (quoting *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007)). If "the language at issue has a plain and unambiguous meaning with regard to the particular dispute," that meaning controls. *Id.* If, however, the statute is subject to conflicting interpretations, we should adopt the one that "effectuates rather than frustrates the major purpose of the legislative draftsmen." *See id.* at 739 (quoting *Shapiro v. United States*, 335 U.S. 1, 31 (1948)). Additionally, RLUIPA itself provides the applicable rule of construction, requiring that its provisions "be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by [its terms] and the Constitution." *See* 42 U.S.C. § 2000cc-3(g).

Again, RLUIPA defines a "land use regulation," in relevant part, as "a zoning . . . law, or the application of such a law, that limits or restricts a claimant's use or development of land." *See* 42 U.S.C. § 2000cc-5(5). Although the precise contours of "zoning" could be difficult to delineate, "at its core [zoning] involves the division of a community into zones based on like land use." *See Fortress Bible Church v. Feiner*, 694 F.3d 208, 216 (2d Cir. 2012) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54-55 (1986)). Similarly, Black's Law Dictionary defines "zoning" as "[t]he legislative division of a region, esp[ecially] a municipality, into separate districts with different regulations within the districts for land use, building size, and the like." *See* Zoning, Black's Law Dictionary (11th ed. 2019). Under both those definitions, the legislative amendment to the County's Water and Sewer Plan sought by Victory Temple constitutes zoning. The County's Water

20

and Sewer Plan divides the relevant area into different categories, each of which impacts land use and restricts or permits a property's development. Here, the County's denial of the Application prevented Victory Temple from developing its Property in any way.

In any event, it is not the label that a government puts on its regulation that determines whether RLUIPA applies, but rather how the regulation actually functions. If a regulation divides a community into zones, restricting or limiting how land can be used within each zone, the regulation is a zoning law subject to RLUIPA. Our approach is entirely consistent with the protections RLUIPA affords religious land use, requiring an ambiguity to be construed in favor of broad protection of religious exercise. This functionalist approach was embraced in 2012 by the Second Circuit, which ruled that, although environmental review considerations were typically not zoning laws and thus not subject to RLUIPA, "when a statutorily mandated environmental quality review process serves as a vehicle to resolve zoning and land use issues, the decision issued constitutes the imposition of a land use regulation as that term is defined in RLUIPA." *See Fortress Bible Church*, 694 F.3d at 218.

Of importance, that the legislative amendment sought by Victory Temple constitutes a land use regulation that is subject to RLUIPA finds strong support in prior decisions in our Circuit. *See Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548 (4th Cir. 2013); *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th Cir. 2010). In *Reaching Hearts*, this very same County had denied an application for a legislative amendment to the prior version of its Water and Sewer Plan, similarly to what happened here. *See* 584 F. Supp. 2d at 774.

21

The application was filed by Reaching Hearts, a religious entity. *Id.* After its denial of the application, the County enacted new legislation that restricted construction of the church on Reaching Hearts' land. *Id.* at 776. The district court analyzed the denial of the application for a legislative amendment to the County's Water and Sewer Plan separately, however, requiring the County to show a compelling interest to support it, and then to show that its denial, together with adoption of the new legislation, constituted the least restrictive means. *Id.* at 787, 789. We affirmed, but did not evaluate RLUIPA's applicability to the requested legislative amendment to the County's Water and Sewer Plan.

Similarly, the *Bethel* case involved a denial of an application for a legislative amendment to a water and sewer plan in Maryland's Montgomery County, as well as a new zoning provision which prevented the plaintiff from building its church. *See* 706 F.3d at 553-54. Although we relied predominantly on the zoning provision when we analyzed the church's claim under RLUIPA, we did not rule that the denial alone would have been insufficient to trigger RLUIPA. Today, we recognize that such a denial may be sufficient to do so.

V.

We turn to the question of whether the County's denial of Victory Temple's Application contravened RLUIPA's substantial burden provision. The district court ruled that it did, and we again agree.

Under RLUIPA's substantial burden provision, which is codified at 42 U.S.C. § 2000cc(a)(1):

22

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

See 42 U.S.C. § 2000cc(a)(1).

The issue we assess is twofold. First, we ask whether the land use regulation imposes a substantial burden. If the answer to that inquiry is in the negative, RLUIPA is not contravened. See Bethel, 706 F.3d at 557. If the answer is yes, however, we must decide whether the land use regulation satisfies strict scrutiny review. See id. at 558.

By its Verdict, the district court ruled that the County's denial of the Application constituted a substantial burden. [9] The County does not challenge that ruling on appeal, and we thus accept it. What the County must now show is that its denial of the Application withstands strict scrutiny review. In order to survive such review, the County must demonstrate that its denial of the Application "[was] the least restrictive means of furthering [a] compelling governmental interest." See 42 U.S.C. § 2000cc(a)(1).[10]

---

[9] The district court observed that the determination of whether the County's denial of the Application imposed a substantial burden on Victory Temple's religious exercise was "not a close call." See Verdict 21. The court acknowledged the significant issue of overcrowding at Victory Temple's current location and emphasized that the County's denial of the Application prevented Victory Temple from building the church it needed on the Property. The court also found that Victory Temple had a reasonable expectation that it could build its church on the Property.

[10] We reject the County's contention that Victory Temple should shoulder the burden of showing that the less restrictive means remained unexplored. Under RLUIPA, after the plaintiff produces prima facie evidence to support a statutory violation, "the (Continued)

A.

With respect to the first prong of strict scrutiny review, the County was obligated to show that it had a compelling interest in the denial of the Application. A compelling interest implicates "the government's paramount interest in protecting physical or mental health, public safety, or public welfare." *See Am. Life League, Inc. v. Reno*, 47 F.3d 642, 655 (4th Cir. 1995) (citing *Sherbert v. Verner*, 347 U.S. 398, 403 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972)). "A 'compelling interest' is not a general interest but must be particular to the specific case; namely, the interest requires the infringement of a particular right in this case due to an interest of the highest order." *See Reaching Hearts*, 584 F.Supp.2d at 788 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). To survive strict scrutiny review, the government must show that pursuit of its compelling interest was the actual reason for its challenged action. *See Bostic v. Schaefer*, 760 F.3d 352, 377 (4th Cir. 2014) (citing *Shaw v. Hunt*, 517 U.S. 899, 908 (1996)).

In these proceedings, the County has identified "traffic safety" as its compelling governmental interest. In its Verdict, the district court acknowledged that Church Road and Mount Oak Road had traffic safety issues. That recognition was predicated primarily on anecdotal evidence in testimony by non-expert witnesses concerning traffic issues. The court accepted traffic safety as the interest that the County relied on when it denied the

---

government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on" the substantial burden element. *See* 42 U.S.C. § 2000cc-2(b).

Application. The court also assumed that traffic safety constituted a compelling interest. Although there was evidence to undermine the County's position that its denial of the Application was motivated by traffic safety concerns,[11] we will also accept that the County's asserted interest in traffic safety was the interest the County relied on when it denied the Application. Like the district court, we will assume — without deciding — that traffic safety constitutes a compelling governmental interest.

B.

With respect to the second prong of strict scrutiny review, the County was obliged to show that its denial of the Application was the least restrictive means of furthering its interest in traffic safety. The district court ruled that the denial of the Application did not constitute the least restrictive means because the County "wholly fail[ed] to link its compelling interest to the denial of Victory Temple's application for an amendment." *See* Verdict 27. We agree.

The County presented no trial evidence to show that it considered any less restrictive means before denying the Application. It contends on appeal, however, that the district

---

[11] For example, Todd Turner, the County Council Chair, identified at least 11 separate "compelling reasons" for denying the Application. That list included "traffic impacts, the environmental impacts, the economic impact, the fiscal impact, potential pollution and air pollution, lack of infrastructure, including for stormwater management, potential impact on the quality of life, inconsistency with the General and Area Master Plans, no demonstration of a hardship by this applicant, and, additionally, the City of Bowie's position." *See* J.A. 743. The County has now abandoned all those "compelling reasons," except the one relating to traffic. In any event, such a large group of bald assertions presents a question as to the interest the County was pursuing when it denied the Application.

25

court erred, as a matter of law, when it based its ruling in part on the County's failure to introduce a traffic study. The County argues that "expert testimony is not required to satisfy strict scrutiny when the matter is one of common sense." *See* Br. of Appellant 40 (citing *Burson v. Freeman*, 504 U.S. 191, 211 (1992)). Although we have no quarrel with that proposition, the County misreads the Verdict. The court did not require the County to produce a traffic study. In discussing the fact that the County had not produced such a study, the court relied on the *Reaching Hearts* decision, which explained that the "absence of qualitative and quantitative evidence on [the County's] part undermine[d] any assertion that it fully and adequately considered any alternatives to its outright denials of [the church's applications.]" *See Reaching Hearts*, 584 F. Supp. 2d at 789. A traffic study was simply one type of evidence that the County could have produced to show that it had considered alternatives to denying the Application. The absence of a traffic study — or any evidence showing that the County considered other ways of achieving its interest in traffic safety — underscores the County's lack of consideration of alternatives. That fact undermines the County's position that its denial of the Application constituted the least restrictive means of furthering the County's interests.

The County also argues in its brief that conducting a traffic study during the COVID-19 pandemic would have produced "inaccurate and irrelevant evidence regarding the actual traffic that this area faces under ordinary circumstances." *See* Br. of Appellant 41. Even if we ignore the fact that the County agreed to expedited discovery and a prompt trial by the court, without waiting for traffic to return to normal, it is unclear how a traffic study conducted after the County's denial of the Application would have demonstrated that

it considered a less restrictive means when it actually reviewed and denied the Application. In fact, the County Council denied the Application on May 7, 2019, long before the pandemic began. *See Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1338 (Fed. Cir. 2005) (explaining that "to be relevant in the strict scrutiny analysis . . . evidence must be proven to have been before Congress prior to enactment of the [suspect] classification").

It is apparent from the record, however, that a less restrictive means was available to the County when it considered and denied the Application. Traffic is supposed to be addressed at the preliminary plan of the subdivision phase, which can only occur after a property is upgraded to water and sewer Category 4. Thus, allowing Victory Temple to be upgraded to Category 4 and to then proceed to the subdivision phase, when traffic concerns are addressed, was necessarily a less restrictive means of furthering the County's interest in traffic safety.

The County relies on a Michigan state court opinion for its position that, when a government is presented with a proposal that it can either accept or reject, it is not presented with any less restrictive alternatives. *See* Br. of Appellant 48 (citing *Greater Bible Way Temple of Jackson v. City of Jackson*, 733 N.W.2d 734, 753 (Mich. 2007)). The County's contention in that respect could be persuasive if the category change application review process here was the only time that the County could consider traffic safety. But that is not so. Although the County Council could either approve or deny the Application, the defendant in this litigation is the County itself. The County has several opportunities to participate in the development review process, including at the preliminary plan of

subdivision phase, which takes place after the category change application has been approved.

Put succinctly, the County never sought to show at trial that it considered alternatives — such as roadway improvements or additional road signs — before denying the Application. At bottom, we agree with the district court that the County's denial of the Application fails strict scrutiny review. In these circumstances, the court did not abuse its discretion in granting Victory Temple the injunctive relief that is appealed from.

VI.

Pursuant to the foregoing, we are constrained to agree with the Verdict and affirm the Injunction issued by the district court.

*AFFIRMED*