# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 27, 2021

Lyle W. Cayce
Clerk

No. 20-60013

Jose Irrael Guillen Cedio,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A201 743 131

Before King, Costa, and Willett, *Circuit Judges*.
Per Curiam:*

Jose Irrael Guillen Cedio petitions for review of the Board of
Immigration Appeals' decision denying him asylum. For the following
reasons, the petition is denied.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60013

## I.

Guillen Cedio is a gay man from San Pedro Sula, Honduras, who entered the United States in March 2019. He expressed credible fear of persecution if he returned to Honduras and was referred to immigration court. Before the Immigration Judge ("IJ"), Guillen Cedio conceded removability; he then applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Guillen Cedio testified that, due to his sexual orientation, he was twice beaten by the police and received three threats from a local sect of the 18th Street gang ("Gang 18"). On January 5, 2018, Gang 18 delivered a handwritten letter to Guillen Cedio's mother that warned that he would be tortured if he continued to violate the gang's rule against being gay. Guillen Cedio brought this letter to two local police officers in a nearby patrol car. Those officers read the letter, laughed, and kicked Guillen Cedio for five minutes. Guillen Cedio reported that his injuries from this incident were "mild" and that he did not see a doctor. Then, on January 15, 2018, another patrol car stopped Guillen Cedio and his boyfriend. This time, five local officers exited the vehicle and kicked the two for around eight minutes, at which point, Guillen Cedio and his boyfriend were able to escape on foot. Guillen Cedio told the IJ that his arms and legs were scraped, but that he did not need to see a doctor. He stayed home for about a month to recuperate after this incident, and no further incidents occurred from January 15, 2018, through January 2019.

In February 2019, Guillen Cedio received two more threatening letters from Gang 18. The first was received on February 1, which "warned [Guillen Cedio] about what [he] was not to do" and stated that he "knew the consequences that awaited [him]." Guillen Cedio did not take any action in response to the letter. On February 9, he received the last letter, which

2

No. 20-60013

warned that Guillen Cedio "had 24 hours to leave [his] house and leave the country." After receiving the February 9 letter, Guillen Cedio left Honduras. Gang 18 came to his family's home on February 10 and ousted them. Thereafter, his family moved approximately ten minutes away and has not since been harmed. Guillen Cedio testified that he never filed a police report regarding any of these incidents because he felt the local police were working with the gang. Along with his testimony, Guillen Cedio provided a series of news articles describing Gang 18's presence in the city as well as the ongoing police efforts to stop the gang.

The IJ issued a decision denying Guillen Cedio's applications. The IJ found that Guillen Cedio failed to establish past persecution because the threats and beatings he described did not meet the legal standard for persecution. The IJ also held that Guillen Cedio could not establish a reasonable fear of future persecution because he had not provided a reasonable explanation for why he could not settle in another part of Honduras. Finally, the IJ found that his withholding of removal and CAT claims failed.

Guillen Cedio appealed to the Board of Immigration Appeals ("BIA"), which dismissed the appeal. The BIA found that he did not establish that his harm, "even in the aggregate," rose to the level of past persecution. It explained that the letters did not equate to persecution because Guillen Cedio never directly spoke to anyone from the gang, and that while the gang did take his family's home, the reason for why it took the home was not clear. With regard to the beatings, the BIA explained that the incidents did not amount to persecution because he did not suffer more than minor injuries, he did not suffer any long-term injuries, and he did not need to see a doctor afterwards. Thus, while Guillen Cedio was a victim of harassment and violence, he was not a victim of persecution. The BIA further concluded that Guillen Cedio did not demonstrate a well-founded fear of

future persecution and that his withholding of removal and CAT claims failed.

Guillen Cedio does not appeal the BIA's conclusions regarding his well-founded fear of future persecution or his withholding of removal and CAT claims. Instead, he appeals only the BIA's finding that he failed to establish past persecution.

## II.

"When . . . the BIA affirms the immigration judge and relies on the reasons set forth in the immigration judge's decision, this court reviews the decision of the immigration judge as well as the decision of the BIA." *Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006). Questions of law are reviewed *de novo*; but factual findings, including a BIA's decision whether an asylum seeker experienced past persecution, are reviewed for substantial evidence. *Gjetani v. Barr*, 968 F.3d 393, 396 (5th Cir. 2020).[1] Substantial evidence review requires "only that the Board's conclusion be based upon the evidence presented and that it be substantially reasonable." *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996) (quoting *Wilson v. INS*, 43 F.3d 211, 213 (5th Cir. 1995)). Thus, reversal is proper only if the petitioner shows "that the evidence was so compelling that no reasonable factfinder could conclude against it." *Wang v. Holder*, 569 F.3d 531, 537 (5th Cir. 2009) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992)).

---

[1] Guillen Cedio suggests that, because he was found credible and the government does not contest his recitation of facts, the finding of past persecution should be reviewed *de novo*. But he made this argument before we decided *Gjetani*, which established that the correct review is one for substantial evidence. *Gjetani*, 968 F.3d at 396.

No. 20-60013

### III.

We first address Guillen Cedio's arguments that the BIA committed legal error. Because we conclude it did not, we then turn to whether the BIA's decision was supported by substantial evidence.

### A.

Guillen Cedio contends that the BIA made three legal errors: (1) the BIA failed to consider the evidence in the aggregate; (2) the BIA improperly discounted Guillen Cedio's testimony regarding the written letters because he failed to offer corroborative evidence; and (3) the BIA improperly adopted a bright-line rule of law that requires long-term impairment to state a claim for asylum.

As a preliminary matter, Guillen Cedio did not raise his discounting-the-evidence or bright-line-rule arguments before the BIA in a motion to reconsider. Therefore, he failed to exhaust his administrative remedies and this court is deprived of jurisdiction to consider these issues. *Avelar-Oliva v. Barr*, 954 F.3d 757, 766 (5th Cir. 2020); *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009).

Guillen Cedio did argue to the BIA that it must consider the cumulative effect of multiple incidents of harm rather than analyze each in isolation. Therefore, we may consider that same argument on appeal. Guillen Cedio is correct that if the BIA had failed to consider the cumulative effect of his harms, it would have erred. *Cf. Eduard v. Ashcroft*, 379 F.3d 182, 188 (5th Cir. 2004). But here, the BIA *did* consider the evidence in the aggregate. It considered the cumulative effect of the letters, and the cumulative effect of the beatings. It also considered how the letters and beatings interacted with each other. Therefore, the BIA considered Guillen Cedio's harms in the aggregate, and it found them insufficient to constitute persecution. Thus, it did not commit legal error.

No. 20-60013

**B.**

We now must examine whether the BIA's finding that the harms did not constitute persecution was supported by substantial evidence.

To qualify for asylum, an applicant must demonstrate "either past persecution or a reasonable, well-founded fear of future persecution" on account of his "race, religion, nationality, membership in a particular social group, or political opinion." *Milat v. Holder*, 755 F.3d 354, 360 (5th Cir. 2014); 8 U.S.C. § 1101(a)(42)(A). Guillen Cedio argues that the two beatings and three threatening letters each independently constitute past persecution, and when considered together, must constitute past persecution.

This court has defined persecution as:

> The infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (*e.g.*, race, religion, political opinion, etc.), in a manner condemned by civilized governments. The harm or suffering need not be physical, but may take other forms, such as the deliberate imposition of severe economic disadvantage or the deprivation of liberty, food, housing, employment or other essentials of life.

*Eduard*, 379 F.3d at 187 (quoting *Abdel-Masieh v. INS*, 73 F.3d 579, 583-84 (5th Cir. 1996)). It is an "extreme concept that does not include every sort of treatment our society regards as offensive." *Id.* at 187 n.4 (quoting *Nagoulko v. INS*, 333 F.3d 1012, 1016 (9th Cir. 2003)). "Neither discrimination nor harassment ordinarily amounts to persecution[.]" *Id.* at 188. Rather, it must be a "*sustained*, systematic effort to target an individual on the basis of a protected ground." *Gjetani v. Barr*, 968 F.3d 393, 397 (5th Cir. 2020).

6

No. 20-60013

Repeated beatings, even severe ones, do not necessarily constitute persecution. *E.g.*, *Abdel-Masieh v. INS*, 73 F.3d 579, 584 (5th Cir. 1996) (finding beatings insufficient to constitute persecution when a person was twice arrested and beaten for three-hour periods); *Singh v. Barr*, 818 F. App'x 331, 334 (5th Cir. 2020) (per curiam) (finding beatings insufficient to constitute persecution where a person was twice beaten, once to the point of unconsciousness and requiring medical attention); *Singh v. Whitaker*, 751 F. App'x 565, 567 (5th Cir. 2019) (per curiam) (finding beatings insufficient to constitute persecution where a person was twice beaten, once having a gun pointed at him); *Venturini v. Mukasey*, 272 F. App'x 397, 402-03 (5th Cir. 2008) (per curiam) (finding beatings insufficient to constitute persecution where a person was twice beaten, resulting in a hospitalization). Given this precedent, Guillen Cedio's argument that his two beatings alone compelled a factfinder to find persecution fails.

Turning to the three threatening letters, death threats may amount to persecution if they reflect "regular and methodical targeting" of the victim. *Gjetani*, 968 F.3d at 398. For example, in *Tamara-Gomez v. Gonzales*, this court found past persecution where, after the petitioner aided the Colombian National Police in recovering the bodies of officers killed by the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), FARC members began a campaign of torment against the petitioner. 447 F.3d 343, 345-46 (5th Cir. 2006). Initially, FARC members repeatedly made threatening phone calls to the petitioner's personal cell phone, but once they found his home address, they began directing threats there as well. *Id.* at 346. The petitioner sought police protection, but the police department informed him that it lacked resources to assist. *Id.* The petitioner moved himself and his family to another house, but the FARC found his new house and continued the threatening calls—now demanding money and threatening to kidnap his children in addition to the death threats. *Id.* After an incident where a bicycle bomb

exploded in his new neighborhood, resulting in the death of five, the petitioner sent his family to the United States and moved to a local military base. *Id.* While this was occurring, the FARC also murdered other participants in the original recovery mission. *Id.* In these circumstances, this court found there to be persecution. *Id.* at 348-49.

On the other hand, where the death threats reflect sporadic incidents, rather than methodical targeting, we have declined to overturn the BIA's decision even if those threats were paired with physical attacks. In *Gjetani v. Barr*, an Albanian citizen, Gjetani, sought asylum after members of his country's Socialist Party threatened to kill him three times and physically attacked him once. 968 F.3d at 395. The first incident occurred when Gjetani was carrying a flag for the Albanian Democratic Party, and a "Socialist contingent confiscated [his] flag[] and threatened to kill Gjetani if he carried Democratic Party flags again. Gjetani attempted to file a report with the police, but was rebuffed." *Id.* Three days later, Socialist Party members came to his home canvassing for votes, and when they learned Gjetani supported the Democratic Party, they attacked both him and his father using a belt and a "sharp metal object." *Id.* Further, they "said they would kill Gjetani if he did not vote as directed." *Id.* Gjetani was hospitalized and received stitches after the incident. *Id.* at 395-96. Finally, a week later, Gjetani was "confronted by Socialist Party members who demanded [he] vote for Socialists or else face death." *Id.* at 396. Six months later, Gjetani sought asylum, but the IJ and BIA found these incidents did not constitute persecution, and we denied the petition for review. *Id.* at 395-96. We explained that, unlike in *Tamara-Gomez*, the conduct did not equate to "an organized, relentless campaign of intimidation, extortion, and murder." *Id.* at 398. This was because the three incidents where Gjetani "was threatened—one of which resulted in physical injury—did not necessarily reflect the kind of pattern of sustained pursuit that persecution requires.

No. 20-60013

Instead, the IJ concluded that these acts were one-off incidents related to the one-time event of the Albanian election, and unlikely to recur." *Id.* at 398-99; *see also Singh*, 818 F. App'x at 334 (finding no persecution where the petitioner was threatened with death and twice beaten, once to the point of unconsciousness).

Turning to the instant case, the evidence presented to the IJ and BIA, while disturbing, does not *compel* the conclusion that this was a "*sustained, systematic effort*" by Gang 18. *Gjetani*, 968 F.3d at 397. Rather, the facts permitted the BIA to find that the threats lacked the pervasiveness to be more than sporadic incidents. *Cf. Eduard v. Ashcroft*, 379 F.3d 182, 187 n.4 (5th Cir. 2004) ("[P]ersecution 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty[.]' " (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998))). Guillen Cedio argues that the police beatings added legitimacy to Gang 18's threats, making them reach the level of a persecutory scheme, but the record contained evidence that permitted the BIA to reject that conclusion. The record reflects that Guillen Cedio never filed a police report regarding the incident because he believed they were "in cahoots," but it also reflects that police were combating Gang 18 in San Pedro Sula. Thus, the BIA was free to conclude that the police and Gang 18 actions were not an organized effort targeting Guillen Cedio but rather were individual, sporadic events.

The harassment and abuse that Guillen Cedio has suffered is distressing and unacceptable, but we are not free to substitute our own judgment for that of the BIA. *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005). Because the BIA's decision need only be "based upon the evidence presented and . . . be substantially reasonable," *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996) (quoting *Wilson v. INS*, 43 F.3d 211, 213 (5th

No. 20-60013

Cir. 1995)), and substantial evidence exists that supports the BIA's conclusion, its order must be affirmed.

## IV.

For the foregoing reasons, the petition for review is DENIED.